Filed March 7, 1888.

<hr/>

No. 13,429.

### TURPIE ET AL. *v.* LOWE.

MORTGAGE.—*Deed Absolute on Face.*—A deed, absolute on its face, may be shown to have been intended as a mortgage, and be so treated in equity.

SAME.—*Trust.—Deed to Secure Advancements.*—A person who accepts a deed for the land of another, and agrees with him to advance money to pay his debts, and to sell the land to raise the money with which to repay himself the sum or sums thus advanced, holds such land as mortgagee, and not as trustee.

SAME.—*Refusal to Make Advancements.—Measure of Damages.*—If, in such a case, after receiving the deed, the grantee and mortgagee refuses to make the advancements agreed upon, he is liable in damages to the mortgagor, and the measure of damages is not the value of the land, nor the sum which he agreed to advance, but the actual damages resulting from the violation of the contract in refusing to make the advancements.

SAME.—*Redemption.*—*Agreement Cutting off Right of.*—An agreement in a. mortgage, or otherwise made at the same time with the mortgage, cutting off the right of redemption, will not be upheld.

STATUTE OF FRAUDS.—*Conveyance of Real Estate.*—*Agreement to Pay Debts of Grantor.*—A promise by a grantee of real estate to pay debts of the grantor in consideration of the land conveyed, is not a promise to pay the debts of another, within the meaning of the statute of frauds, and hence need not be in writing.

SAME.—*Agreement to Pay Purchase-Price of Land.*—A promise to pay the purchase-price of land conveyed is not within that provision of the statute of frauds which inhibits the maintenance of an action upon a verbal contract for the sale of land.

VENDOR AND PURCHASER.—*Agreement of Grantee to Pay Liens and Debts.*— *Right of Action.*—Where a vendee of real estate, in consideration for the land, agrees to pay off liens, and debts of the grantor, but afterwards refuses to do so, the grantor may maintain an action against him without first paying off such liens and debts.

From the White Circuit Court.

*A. W. Reynolds, E. B. Sellers, L. Walker* and *W. B. Mc-Clintic,* for appellants.

*R. P. Davidson, E. P. Hammond, W. B. Austin* and *R. Gregory,* for appellee.

ZOLLARS, J.—The court below sustained a demurrer to each paragraph of appellants' complaint. That ruling is assigned as error. The complaint is in three paragraphs. For the purposes of this decision, it will be sufficient to refer to the third paragraph, as that embraces all that is contained in the other two. We set out below a summary of the third paragraph furnished by counsel:

3. The said plaintiffs, James H. Turpie and William Turpie, for a third and further cause of action against said defendant, Hugh Lowe, say that, on the 12th day of December, 1885, they were the owners of the following described real estate in the State of Indiana, county of White: [Description]. Also, the following described real estate in the county of Starke, in said State, to wit: [Description]. Also, the following described land in the county of Jasper, and State of Indiana, to wit: [Description]. Also, the following de-

scribed lands in the county of Franklin, and State of Ohio, to wit: [Description]. Also, the following described lands in the county of Franklin, and State of Ohio: First parcel: [Description]. Second parcel: [Description]. Third parcel: being the undivided one-half ($\frac{1}{2}$) of the following described premises situated in Clinton township, Franklin county, Ohio: [Description]. Also, the following described real estate in said county of Franklin, and State of Ohio: [Description]. Also, the following real estate situated in the county of Franklin, and State of Ohio, in the township of Clinton, and being part of the third quarter ($\frac{1}{4}$), township one (1), range eighteen (18), U. S. military lands, bounded and described as follows, to wit: [Description]. Also, the following real estate in the county of Franklin, in the State of Ohio, and city of Columbus: [Description]. Also, the following described real estate in the county of Union and State of Ohio: [Description].

That on said 12th day of December, 1885, the said defendant and plaintiffs entered into a parol agreement touching said real estate as follows: The said plaintiffs undertook and promised to convey and cause to be conveyed to said defendant all of said real estate by good and sufficient deeds, but subject to the liens and encumbrances thereon, in consideration of which, and in further consideration of the sum of three thousand dollars promised by plaintiffs to be paid to defendant and included in a note theretofore executed by plaintiffs to defendant, the said defendant undertook and agreed that he would bid off and purchase for plaintiffs all of said plaintiffs' personal property, which at that time was levied on and advertised for sale by the sheriff of White county, Indiana, on executions then and there held by such sheriff against the property of plaintiffs, and pay for the same to said sheriff the purchase-price therefor; that he would pay off all judgments then existing and unpaid that had theretofore been rendered against them, or either of said plaintiffs, in the White Circuit Court of Indiana, a list of

which is filed herewith marked Exhibit A and made part hereof; that he would pay off all judgments then existing and unpaid rendered against said plaintiffs, or either of them, before any justice of the peace of Monon township, in said county of White, a copy of which is filed herewith, marked Exhibit B and made part hereof; that he would pay all taxes, liens, assessments and encumbrances then subsisting against said lands or any part thereof, so to be conveyed to him as aforesaid, a copy of which is filed herewith marked Exhibit X; that he would pay in full a certain debt then due and owing from said plaintiffs to one Cornelius M. Horner, amounting to about the sum of thirteen hundred and thirty-five dollars; that he would pay in full a certain debt then due and owing from said plaintiffs to one John Miller, amounting to about the sum of one thousand dollars, on which said debt the said Cornelius M. Horner was surety; that he would pay in full a certain debt then due and owing by said James H. Turpie to one William H. Bradford, amounting to about the sum of nine hundred dollars; that he would pay in full a debt then due and owing by said James H. Turpie to one —— Hamilton, amounting to about the sum of seven hundred and fifty dollars; that he would pay in full a debt then due and owing one John Ball from said plaintiffs, amounting to about the sum of forty-seven dollars. Said Lowe further covenanted, as a part of said agreement, that he would convey, at the request of said plaintiffs, to any person named by them, such part of said lands as at a fair valuation would satisfy or pay three several judgments, rendered against said Turpies in the Carroll Circuit Court then remaining unpaid, said payment to be made by transfer of said lands, or out of the proceeds thereof, when sold.

It was further stipulated as a part of said agreement that the said several payments above mentioned, agreed to be made by said Lowe, should be made immediately, in order to avoid costs and interest, and to remove the liens on said lands

so as to facilitate their immediate sale ; that when said amounts
so agreed to be paid by said Lowe were fully paid, and the
amount thereof correctly ascertained, the said plaintiffs were
to execute their note or notes payable in one year from the
date thereof to said Lowe, which were to be so executed for
the purpose of evidencing the amount of said payments so
made by him, but the same were to be paid off and satisfied
only in the manner hereinafter stated.    It was further in said
contract agreed that said Lowe, after receiving said convey-
ances, was to make sale of any part, or all of said property,
in his own discretion, and out of the proceeds derived from
such sales he was to pay off all the amounts so paid and ex-
pended by him, and the amount of said note theretofore exe-
cuted by said plaintiffs to him, and all costs and expenses of
the execution of said agreement, and accruing taxes and as-
sessments on said property, with eight per cent. interest per
annum on each and all of said items.

It was further agreed that should the said Lowe, at any
time after said agreement, and before the full execution
thereof, desire or elect to retain any or all of said real estate
as his own in fee, he should have the right so to do by allow-
ing, or paying, the fair cash value thereof in satisfaction of
any part of said agreement.    The said defendant further stip-
ulated in said agreement that after the application of said
lands, or the proceeds thereof, to the uses and purposes here-
tofore stated, all the surplus remaining, either in real estate
or money, he would convey, or pay, to the said plaintiffs,
or to such parties as they might designate.    And these plain-
tiffs say that, in pursuance of said agreement, they forthwith
conveyed, and caused to be conveyed, to said defendant all
of the real estate hereinbefore described ; that said real estate
so conveyed as aforesaid was of the value of seventy-five
thousand dollars, and said defendant accepted said deeds so
executed and delivered, and entered upon the execution of
the agreement on his part by paying, or causing to be paid,

a small portion of the debts or liabilities covered by said agreement.

And plaintiffs further allege that on the — day of January, 1886, subsequent to the matter hereinbefore stated, the plaintiffs were the owners of the following described real estate in the State of Ohio, to wit : [Description]. That the following described real estate in the county of Franklin and State of Ohio, to wit: [Description] had been purchased by plaintiffs from one R. P. Woodruff, at said day last named, and payment made therefor in full by them excepting a small amount, to wit, the sum of three hundred dollars, on payment of which a deed was to be made by said Woodruff to said plaintiffs; that on said date said defendant and plaintiffs entered into a supplemental agreement in regard to said property in the cities of Columbus and Mount Vernon, Ohio, and in modification of said agreement of the 12th of December, 1885, as follows : It was, on said — day of January, aforesaid, agreed by and between said parties, for the consideration hereinafter named, that the said Hugh Lowe should pay off all the liens and encumbrances upon the property hereinbefore described, situated in the State of Ohio, which liens and encumbrances amounted in the aggregate to about the sum of twenty thousand dollars, a copy of which is filed herewith, marked Z, and that he should further pay the amount necessary to be paid to procure said deed from said Woodruff.

It was further stipulated in said agreement that, in consideration of such payments, the said Lowe was to be entitled to and receive the undivided one-half in fee of all said real estate in the State of Ohio, except certain lots in said city of Columbus hereinafter named. And it was then, for the considerations hereinbefore mentioned, agreed between said parties, that said Lowe should receive the said deed from said Woodruff for said property in Columbus ; that the wives of said Turpies should convey to him the undivided one-half of said property in the city of Mount Vernon aforesaid ;

and that he should hold released from the trust aforesaid the undivided one-half of all the real estate in the State of Ohio theretofore conveyed to him under the said agreement of December 12th, 1885. It was further in said agreement stipulated, on the considerations named, that the following described lots in Columbus, Ohio, to wit: lots 244, 245, 246, 247, 248, 249, 250, 251 and 252 in R. P. Woodruff's Agricultural College addition to said city, which were included in said deed of Woodruff to defendant, should be conveyed by said Lowe in fee, and clear of all encumbrances, to Emma J. Turpie and Mary H. Turpie, the wives of these plaintiffs; and that the undivided one-half of the remainder of the property so conveyed by said Woodruff to said Lowe should be by him held under the trust hereinbefore stated, in lieu of the undivided one-half of the other real estate in Ohio, which, by this supplemental contract, was released from the operation of said trust and vested absolutely in fee in said Lowe; that said contract was made at said time at the city of Columbus aforesaid, and was in parol, with the agreement at the same time made between said parties that immediately on their return to White county, Indiana, where all said parties resided, the said contracts should be reduced to writing and signed by all the said parties thereto. And said plaintiffs further say, that, in pursuance of said contract so made, these plaintiffs procured said Woodruff to make conveyance to said Lowe of said real estate in the city of Columbus, Ohio, which deed the said Lowe received and accepted, and undertook therein and thereby to pay an encumbrance by way of mortgage upon the real estate so conveyed to him, amounting to about ten thousand dollars; that under said agreement said Lowe further paid the following amounts which were encumbrances on said real estate, to wit: taxes in Franklin county, Ohio, about $800; interest to Allen G. Thurman, about $400; that the conveyance of the property in the city of Mount Vernon, Ohio, could not be made at the time of said contract by plaintiffs on account of the necessity

.of the wives of said plaintiffs joining therein, they then being at their homes in said county of White, and it was then agreed that the said deed should be made and delivered in pursuance of said contract on their return to said White county. And they further allege that immediately on their return to said county of White, and before said deed could be executed and delivered, the said defendant, without cause, wrongfully repudiated and refused to execute said trust, and, within about four days of the making of said contract, notified these plaintiffs that he would not perform said agreement, or any part thereof; that he would not pay the said debts and encumbrances, or any of them, which he had so agreed to pay in consideration of the conveyance of said real estate; that he would not convey to the wives of said Turpies the real estate in the city of Columbus, so agreed by him to be conveyed to them free of encumbrance; that he would not convey to said Turpies any of said real estate, or pay to them any part of the proceeds thereof. And thereupon these plaintiffs made and tendered to said Lowe a deed in due form for said real estate in the city of Mount Vernon, Ohio, in accordance with said contract, and demanded of him that he should perform all and singular the stipulations of said agreement, which said tender and demand were made prior to the commencement of this action.

And they further allege that said Lowe refused to receive the deed so tendered, and refused, and still refuses and neglects to perform the agreement so entered into by him as aforesaid, or any part thereof, but retains possession and control of all of said real estate for his own use, to the entire exclusion of the plaintiffs therefrom; that said real estate so held by said defendant, Hugh Lowe, was, and is, of the value of two hundred thousand dollars. And said plaintiffs bring herewith into court the said deed so tendered to said Lowe for the said real estate in the city of Mount Vernon, Ohio, and continue the tender thereof to said defendant, and offer

to execute and deliver to him such other conveyance of said property as the court on hearing of this cause may require.

And plaintiffs allege that they have suffered damages in the premises in the sum of two hundred thousand dollars. And they demand judgment against said defendant in the sum of two hundred thousand dollars, and all other proper relief.

It is insisted by appellants' counsel that there is a material difference between the contract as made in December, 1885, when the deeds from appellants to Lowe for the real estate were executed, and the subsequent agreement made in Columbus. We, therefore, first give attention to the contract as made in December, 1885. What was its purpose, and what the relation and rights which it established between the parties? The deeds from appellants to Lowe are absolute and unqualified conveyances to him of the lands therein described. Notwithstanding that fact, it is very apparent upon a reading of the complaint that it was not the purpose of the parties that the lands should, in the first instance, be sold and conveyed to Lowe absolutely and unconditionally. In the first place, the sums which he agreed to pay, if we may look to the list of judgments and liens filed with the complaint, were entirely inadequate as compared with the value of the lands as stated in the complaint. That is a circumstance to show that a sale was not intended. 1 Jones Mortg., section 275. In the second place, the Turpies were indebted to Lowe, and that amount, and the amounts to be advanced by him under the agreement, were to be repaid to him with interest. 1 Jones Mortg., section 273. And if we may look to the copies of the deeds filed with the complaint, some of them have no expressed consideration.

The purpose of the conveyances to Lowe when they were made, in December, 1885, as shown by the several averments of the complaint taken together, was to secure to him the payment of the sum then due to him, to procure from him further advances in the way of payment of debts and

liens upon the lands, and upon personal property under levy by the sheriff, and to secure to him the repayment of the sums thus advanced. In more general terms, the purpose was to save to appellants their personal property and lands, or the value of them over and above the liens thereon, and to secure to Lowe the payment of what was then due to him, and the repayment to him of the sums to be by him advanced in the payment of the liens and debts.

As between the parties, and for the purposes intended, the deeds, although absolute in form, will be treated in equity as mortgages. Oral testimony is competent to show that a deed absolute in form was intended to operate as a mortgage.

It is said by counsel for appellant that, under the agreement, Lowe did not become a mortgagee but a trustee, but it will be observed that he was not to sell the lands and personal property and thus raise money with which to pay the liens and debts, but he was to advance his own money in the payment of them. To pay certain judgments in Carroll county, upon the request of appellants, Lowe was to convey to any person whom they might designate a sufficient amount in value of the lands conveyed by them to him.

After the payment of the liens and debts by Lowe, there was to be an accounting, and appellants were to give to him their note for the amount due him by reason of such advancements. The amount so advanced, and all expenses, with eight per cent. per annum, Lowe was to receive back in money. That was to be accomplished by a sale of the lands, and if, after such repayment, any part of the lands remained, they were to be reconveyed to appellants, or if any proceeds of lands were left after such repayment, the same were to be handed over to appellants.

In his work on mortgages, at section 271, Mr. Jones says: " On the other hand, an agreement that the grantee may sell all the property for the best possible price and retain from the proceeds the amount due him, paying the residue to the grantor, shows that the transaction is a mortgage, until the

power of sale is executed.   *   *   *   And so a conveyance to a trustee with power to sell the land, pay the creditor from the proceeds, and deliver the balance to the grantor on his failure to pay the debt, is a mortgage."

In the case of *Crane* v. *Buchanan*, 29 Ind. 570, a debtor conveyed his land by an absolute deed to his creditor for the purpose of securing to him the payment of a debt.   It was also agreed that the creditor and grantee might sell the land, and, after retaining enough to pay his debt, should pay over to the grantor the excess.   In relation to the agreement it was said: "The case presented by the complaint does not show that the deed was intended to create a trust, within the meaning of the statute, but that it was intended as a mortgage to secure to the appellant the sum of $6,000.   That parol evidence is admissible to show that a deed, absolute on its face, was intended to be a mortgage only, and was executed as a security for the payment of money, or the performance of some act, is too well settled by repeated decisions of this court to be regarded as an open question in this State."   See, also, *Davis* v. *Stonestreet*, 4 Ind. 101; *Fox* v. *Fraser*, 92 Ind. 265; *Butcher* v. *Stultz*, 60 Ind. 170; *Parker* v. *Hubble*, 75 Ind. 580; *Lucas* v. *Hendrix*, 92 Ind. 54; *Beatty* v. *Brummett*, 94 Ind. 76; *Cox* v. *Ratcliffe*, 105 Ind. 374; *Voss* v. *Eller*, 109 Ind. 260; *Smith* v. *Parks*, 22 Ind. 59; *Wheeler* v. *Ruston*, 19 Ind. 334; *Hanlon* v. *Doherty*, 109 Ind. 37.

In the case of *Taylor* v. *Cornelius*, 60 Pa. St. 187, a debtor conveyed his real estate to a creditor by an absolute deed, with a written agreement or declaration on the part of the creditor that he would sell all, or a part of the property, pay the debt due to himself, and all sums to be advanced by him, and that upon payment of those sums, with interest, he would reconvey the remaining real estate to the debtor.   In speaking of the deed and the agreement or declaration on the part of the creditor, SHARSWOOD, J., said: "Together they constituted merely a mortgage to Taylor, with a power of sale for the purpose of securing advances already made or there-

after to be made for the use and benefit of Douredoure (the debtor). For what purposes the advances were to be made, or whether they were to be applied to their objects by the mortgagor or mortgagee, does not appear to be material. It was a security for debts thereafter to be contracted by the advance of money. *Griffin* v. *Rogers,* 2 Wright, 382. There was no trust for any creditor ; the grantee could not be called on to account except by the grantor. Such a mortgage without any power of sale in the mortgagee, has often been decided to be valid in Pennsylvania. 'It is now settled,' says Mr. Justice HUSTON, in *Stewart* v. *Stocker,* 1 Watts, 140, ' that a mortgage or judgment may be given to secure a creditor, not only for a debt due, but for responsibilities, which are contingent, nay, for future advances.' *Lisle* v. *Ducomb,* 5 Binn. 585 ; *Garber* v. *Henry,* 6 Watts, 57 ; *Parmentier* v. *Gillespie,* 9 Barr, 86 ; *Maroney's Appeal,* 12 Harris, 372. The power of sale does not vary the case ; it creates no trust for creditors ; it no more converts a mortgage to secure future advances to be applied in payment of the debts of the mortgagor into an assignment in trust for the benefit of creditors than would such a power in an ordinary mortgage given to secure a loan." See, also, *Smith* v. 49 & 56 *Quartz Mining Co.,* 14 Cal. 242 ; *Comstock* v. *Howard,* Walker Ch. R. (Mich.) 111 ; *Myer's Appeal* (*In Porter's Estate*), 42 Pa. St. 518 ; 1 Jones Mortgages, section 281 ; *Irwin's Heirs* v. *Longworth,* 20 Ohio, 581.

The ruling in the case of *Woodruff* v. *Robb,* 19 Ohio, 212, is stated in the syllabus as follows : "A deed conveying land to a trustee, merely as collateral security for the payment of a debt, with the condition that it shall be void on the payment of the debt when due, with power to the trustee to sell the land and pay the debt, in case of failure to pay on the part of the debtor, is a mortgage within the meaning of the registry act," etc. In the opinion by the court is this : "Now, the difference between a conveyance to a trustee, for the purpose of raising a fund to pay debts, and a conveyance for the

purpose of securing a debt in case of the default of the debtor, by a time limited, is very apparent. In the first case, the title is vested absolutely, by the conveyance itself, in the grantee, for the purpose of the trust. The intention of the grantor is to part absolutely with his title. In the latter case, if the grantor perform his legal obligation, according to its terms, he retains his property. His title is as perfect as if such conveyance had never been made. The one is a deed of trust, the other a mortgage." And again, on page 217: " It (the deed) was a mere security for a debt, to be void if the debt were paid. The fact that the conveyance was made to a person other than the creditor, and that it contained a power to sell, does not alter its character in this particular." To the same effect see *Lawrence* v. *Farmers' Loan, etc., Co.,* 13 N. Y. 200.

In the case of *Hoffman* v. *Mackall,* 5 Ohio St. 124 (64 Am. Dec. 637), cited by counsel for appellee, it was said: " There is a manifest and well settled distinction between an unconditional deed of trust, and a mortgage or deed of trust in the nature of a mortgage. The former is an absolute and indefeasible conveyance of the subject-matter thereof, for the purpose expressed; whereas the latter is conditional and defeasible. A mortgage is the conveyance of an estate, or pledge of property, as security for the payment of money, or the performance of some other act, and conditioned to become void upon such payment or performance. A deed of trust in the nature of a mortgage, is a conveyance in trust by way of security, subject to a condition of defeasance, or redeemable at any time before the sale of the property. A deed conveying land to a trustee as mere collateral security for the payment of a debt, with the condition that it shall become void on the payment of the debt when due, and with power to the trustee to sell the land and pay the debt in case of default on the part of the debtor, is a deed of trust in the nature of a mortgage. By an absolute deed of trust, the

grantor parts absolutely with the title, which rests in the grantee unconditionally, for the purpose of the trust. The latter is a conveyance to a trustee for the purpose of raising a fund to pay debts; while the former is a conveyance in trust for the purpose of securing a debt, subject to a condition of defeasance." See, also, to the same effect, 1 Jones Mortg., section 62, and cases there cited; Boone Mortg., section 226, and cases there cited; 2 Perry Trusts, sections 602*a*, 602*g*, 602*d; Shillaber* v. *Robinson,* 97 U. S. 68.

Under the authorities above cited, and many others that might be cited, the deed from appellants to Lowe, with the accompanying parol agreement, is clearly a mortgage. It was given to secure an existing indebtedness and future advances. Doubtless, appellants could redeem from it by paying the amount due to Lowe at any time before a sale of. the land by him.

Under the agreement he is given authority to sell the lands for the purpose of raising money with which to pay appellants' indebtedness to him, but not for the purpose of raising money with which to pay the liens, etc.; those he agreed to pay with his own money, and look to the lands for indemnity.

There is no trust, even conceding that in this State such an express trust could be created and established by parol, which the lien-holders can enforce by compelling Lowe to sell the lands. He does not hold the lands in trust for them, nor as security for their claims, but holds them as security for the debts due, or that may become due, from appellants to him. The fact that he is clothed with authority to sell the lands does not destroy the mortgage.

It is contended by counsel for appellants that, by reason of the agreement giving Lowe the right at any time after the agreement, and before the full execution thereof, to retain any or all of the real estate as his own in fee, by allowing, or paying, the fair cash value thereof in satisfaction of any part of the agreement, the deed can not be regarded as a mortgage.

Turpie *et al. v.* Lowe.

That contention is based upon the further claim that that part of the agreement cuts off all right of redemption, and that such a right is essential to a mortgage.

We do not think that that portion of the agreement will thus overthrow the whole agreement, by changing it into a contract different from what the parties intended. In the first place, it does not absolutely cut off the right of redemption of any portion of the lands. If it did, it would be necessary to hold it void. It is well settled that an agreement in a mortgage, or made *at the same time* with the mortgage, cutting off the right of redemption, will not be upheld. Chancellor KENT, in the case of *Henry* v. *Davis*, 1 Johns. Ch. 40 (42), said: "It is clearly established by the answer and the proofs, that the bond and mortgage were assigned by plaintiff to the defendant C. by way of mortgage, to secure the payment of two hundred and twenty-five dollars by a given day; and any agreement that the assignment was to be an absolute sale, without redemption, upon default of payment on the day, was unconscientious, oppressive, illegal, and void. The equity of redemption still existed in the plaintiff, notwithstanding any such agreement. There is no principle in equity better settled, than that every contract for the security of a debt, by the conveyance of real estate, is a mortgage; and all agreements of the parties, tending to alter, in any subsequent event, the original nature of the mortgage, and prevent the equity of redemption, is void. If the conveyance, or assignment, was a mortgage in the beginning, the right of redemption is an inseparable incident, and can not be restrained or clogged by agreement. Though the conveyance be absolute in terms, yet if the intention appears to make it a redeemable estate, it will continue so until foreclosure; for the maxim of equity is, that an estate can not be a mortgage at one time, and an absolute purchase at another."

In the case of *Peugh* v. *Davis*, 96 U. S. 332 (337), it was said: "It is also an established doctrine that an equity of redemption is inseparably connected with a mortgage; that

is to say, so long as the instrument is one of security, the borrower has in a court of equity a right to redeem the property upon payment of the loan. This right can not be waived or abandoned by any stipulation of the parties made at the time, even if embodied in the mortgage. This is a doctrine from which a court of equity never deviates. Its maintenance is deemed essential to the protection of the debtor, who, under pressing necessities, will often submit to ruinous conditions, expecting or hoping to be able to repay the loan at its maturity, and thus prevent the conditions from being enforced and the property sacrificed." See, also, *Wilson* v. *Carpenter*, 62 Ind. 495; 1 Jones Mortgages, section 251, and cases there cited.

The agreement in relation to Lowe's right to take the lands, or a part of them, at their fair cash value, is more in the nature of an agreement to sell and purchase in the future than of a stipulation cutting off the right of redemption. It is more of the nature of the agreement allowing Lowe to sell the lands to raise money with which to pay appellants' indebtedness to him than of a stipulation cutting off the right of redemption.

We need not here determine whether or not that portion of the verbal agreement allowing Lowe to take the lands and account for their value is invalid by reason of the uncertainty and deficiency in the mode of fixing, or agreeing upon, the value of the lands, or by reason of it being within the statute of frauds. He has not exercised the election. He has not taken any of the lands under that agreement. Of course, if he had sold any of the lands, or if in any legal way he had become the owner of them absolutely under the agreement, as to those sold, or taken, the right to redeem would have been cut off. But the mere verbal agreement that he might, upon his election, retain some or all of the lands, does not destroy the mortgage, nor change it into a contract different from what the parties intended it should be, viz., a security and indemnity to Lowe for the amount

then due to him, and that might become due to him by reason of future advances.

So long, at least, as the lands remain unsold, or not in some legal way taken by Lowe as owner, he holds them as security and indemnity for the amount due, and to-become due, to him from appellants.

The complaint shows that Lowe bought in the personal property and advanced some of the money which he agreed to advance in payment of the liens upon the lands. It also shows that he has refused to make further advancements, and that he " retains possession and control of all said real estate for his own use, to the entire exclusion of the plaintiffs therefrom."

These averments in the complaint show that Lowe has not kept and performed his agreement with appellants; in other words, that he has violated that agreement. The question then is, have appellants a right of action against Lowe by reason of his violation of the contract, and if so, what is the measure of their damages? It was agreed below, and is agreed here, that if appellants are entitled to but nominal damages the judgment of the court below shall be affirmed. We inquire, therefore, whether or not appellants, by the averments in their complaint, show that they are entitled to anything more than nominal damages under the contract as made in December, 1885. Appellants, by their counsel, claim that they are entitled to recover either the full amount which Lowe agreed to advance in the way of discharging liens and debts, or the value of all the lands conveyed to him by the deeds.

If we are correct in our construction of the contract set up in the complaint, Lowe's agreement to pay liens, etc., was nothing more than a contract to advance money for the benefit of appellants, and is the same, in effect, as if he had agreed to advance money direct to them as a loan. Whatever damages, therefore, they might recover from Lowe for the refusal to make such a direct loan, after having taken

security for the same, they may recover here, and nothing more.

Lowe was to make advancements to appellants in the way of paying off debts and liens upon the lands, and was to be repaid the amount thus advanced, with eight per cent. interest. He has advanced a, portion of the amount thus agreed upon, and refused to advance the balance. Surely, that refusal does not entitle appellants to recover of him as damages absolutely, and without any possibility of his procuring a repayment, the full amount which he has neglected to advance. If it does, the violation of the contract on Lowe's part is a most fortunate thing for them, for they will thus be enabled to get the amount which Lowe agreed to advance, and he will have no claim, either upon them or upon the lands, for repayment.

The question here presented is fully met and decided in the case of *Stanley* v. *Nye*, 51 Mich. 232. In that case a lot had been conveyed by the plaintiff to the defendant to secure an existing debt and a promised loan of $2,000. The defendant, after getting the deed, refused to make the loan, and the plaintiff brought an action to recover the amount of the promised loan. The court held, COOLEY, J., writing the opinion, that if the plaintiff had a right of action, it could only be for damages for not making the loan as agreed.

In the case before us, it is not shown that appellants have suffered any special injury or loss by reason of the failure of Lowe to make the advancements as agreed.

The case is totally unlike a case where, in consideration of property sold and conveyed absolutely, the purchaser agrees to pay debts owed by the vendor. In such a case the debts assumed become the debts of the vendee, and the payment of them by him may be enforced by the creditors of the vendor. Or, if they do not enforce the payment of them, and the vendee neglects or refuses to pay, the vendor may recover the amount as the purchase-price of the property conveyed.

Here Lowe became the debtor of no one; he simply promised to make advancements for the benefit of appellants, and

has refused to make them. In no event can appellants re-
cover more than the special damages which they have suf-
fered by reason of his refusal, and they have shown no such
special damages.

Nor can appellants recover of Lowe the value of the lands
conveyed to him. As we have seen, he did not purchase the
lands, and hence did not agree to advance anything in pay-
ment for them. Nor has he elected to take the lands as
owner, and account for their cash value under the agreement
of December, 1885. He has not sold any of the lands, and
hence can not be charged with their value on that ground.
He has simply refused to do anything in the way of carrying
out his agreement as made in December, 1885, except the
payment of such liens as he has paid. It is averred that
Lowe retains possession and control of all the real estate con-
veyed to him, for his own use, to the entire exclusion of ap-
pellants; but that act did not, and does not, invest him with
the ownership of the lands, nor make him liable for the full
value of them. If his possession and control of the lands
and the exclusion of appellants are wrongful, he may be made
to respond in damages, but the damages will not be measured
by the value of the lands.

The case here is not at all like a case where a vendee has
paid for land, and the vendor refuses to convey it, or where
a vendee refuses to accept a deed or pay for land which he
has purchased.

As we have stated, whatever damages appellants have suf-
fered by Lowe's possession of the lands, and their exclusion
therefrom, if the possession and exclusion are wrongful, they
may recover; but here, again, no special damages are alleged.

Our conclusion is, that, under the agreement of December,
1885, the deeds to Lowe, as between him and appellants, are
to be treated as a mortgage, and that appellants' complaint,
so far as it rests upon those deeds and that agreement, does
not make a case for anything more than nominal damages.
It must be remembered that this is not an action to set aside

the deeds to Lowe, and recover the lands, or any part of them.

We pass now to the supplemental contract made at Columbus in January, 1886.

The liens and debts which Lowe agreed to pay in December, 1885, were all in the State of Indiana. To secure the repayment of the amounts so to be advanced, the lands in Indiana and Ohio were conveyed. It is averred that, in January, 1886, appellants were the owners of certain described real estate in the city of Mount Vernon, Ohio, and had purchased from R. P. Woodruff a number of lots in the city of Columbus, in the same State. The whole of the purchase-price of the Columbus lots had not been paid, nor had appellants received a deed therefor. These lots in the cities of Mount Vernon and Columbus were not included in the deeds from appellants to Lowe executed in December, 1885. In some respects, the Columbus agreement, as set out in the complaint, is not as definite as it might be, but the substance of it, so far as it relates to the agreement on the part of Lowe, is this: He agreed to pay off all liens and encumbrances upon the real estate in Ohio, and also the amount due to Woodruff, $300, and necessary to be paid in order to get a deed from him. Those amounts aggregated about $20,000. The amounts thus agreed to be paid were not included in the agreement of December, 1885. That agreement, so far as it had reference to advancements and payments by Lowe, was, as we have before in effect stated, limited to debts due from appellants, and to liens upon the lands in Indiana. The deeds executed at that time were intended to secure the payment to Lowe of the amount then due to him, and the advancements to be made under that agreement.

The Columbus agreement has no connection with the agreement of December, 1885, except so far as it affects, or was intended to affect, the Ohio lands included in the deeds executed as a part of the agreement of December, 1885.

In consideration of and for the payments to be made by Lowe in Ohio, it was stipulated in the Columbus agreement that he should have in fee the undivided one-half of all the Ohio lands, including not only those conveyed by the deeds of December, 1885, but, also, the lots in Mount Vernon, and those in Columbus, a conveyance of which Woodruff had not yet executed, except a portion of which he, Lowe, was to convey to appellants' wives.

The terms of the contract, as stated in the complaint, are, that " Lowe was to be entitled to and receive the undivided one-half in fee of all said real estate in the State of Ohio, * * * and that he should hold released from the trust aforesaid the undivided one-half of all of the real estate in Ohio, * * * * which, by this supplemental contract, was released from the operation of said trust, and vested absolutely in fee in said Lowe." Appellants and their wives were to convey to Lowe the undivided one-half of the lots in Mount Vernon, but on account of the absence of the wives it was agreed that the conveyance should be executed at once upon the return of the parties to their homes in Indiana.

It was further agreed that Woodruff should convey directly to Lowe, and that he should thereupon convey to appellants' wives, free from encumbrances, a portion of the lots so conveyed to him.

In pursuance of the agreement, Woodruff conveyed the Columbus lots to Lowe, and he accepted the conveyance, and, according to the averments of the complaint, has possession of the property. There has been no conveyance to Lowe of the undivided one-half of the Mount Vernon lots, for the reason that he has refused to accept a conveyance of them, and has repudiated the contract in relation to them, as, also, his contract to pay the liens upon the Ohio property, with the exception of some taxes, and interest on a mortgage which he has paid. He has, also, refused to convey the Columbus lots to appellants' wives, as he agreed to do.

As already stated, Lowe was to have and own the undi-

vided one-half of the lots conveyed to him by Woodruff, except the lots which he agreed to convey to appellants' wives. The other undivided one-half of the lots thus conveyed, except, again, those to be conveyed to appellants' wives, he was to hold subject to the terms of the agreement made in December, 1885.

Upon that feature of the Columbus contract we need add nothing here, further than what has already been said in relation to the contract of December, 1885.

Are appellants entitled to recover, by reason of the alleged violation of the Columbus contract by Lowe, and if so, are they entitled to recover anything more than nominal damages? The Columbus contract, as stated in the complaint, is somewhat confused and uncertain, but not so uncertain, we think, as to defeat an action like this if it is otherwise valid and obligatory upon the parties. Perhaps appellee might have enforced more definite statements of the terms of the contract, if, instead of demurring to the complaint, he had interposed a motion to have it made more certain and specific.

The Columbus contract is different from that made in December, 1885. It amounts to a sale of an undivided one-half of certain lands and lots to Lowe in consideration of a payment by him of certain liens and encumbrances, more particularly described in a bill of particulars filed with the complaint. The promise to pay those liens was, in legal effect, the same as a promise to pay so much direct to appellants as the purchase-price of the lands and lots. Although not in writing, it is neither void nor voidable as being a promise to answer for the debt of another. Browne Statute of Frauds, section 188, and the cases there cited; *Crim* v. *Fitch,* 53 Ind. 214, and cases there cited; *McDill* v. *Gunn,* 43 Ind. 315 ; *Headrick* v. *Wisehart,* 57 Ind. 129 (135) ; *Windell* v. *Hudson,* 102 Ind. 521 ; *Helms* v. *Kearns,* 40 Ind. 124.

Neither is a promise to pay the purchase-price of land conveyed within that provision of the statute of frauds which inhibits the maintenance of an action upon a verbal

contract for the sale of land. *Worley* v. *Sipe,* 111 Ind. 238, and cases there cited ; Browne Statute of Frauds, section 270, and cases there cited; *Arnold* v. *Stephenson,* 79 Ind. 126 ; *Stephenson* v. *Arnold,* 89 Ind. 426.

As we have said, in pursuance of the Columbus agreement Woodruff conveyed the Columbus lots to Lowe. He accepted the deed, and, according to the averments in the complaint, took possession, and still holds possession, of the lots. The undivided one-half of the lots, except those which he agreed to convey to appellants' wives, he took as the owner in fee, in pursuance of the agreement. He can not keep and hold the half interest of the lots and pay nothing. As to the interest which Lowe has in those lots, no question can be made upon the statute of frauds. As to them, the contract has been performed on the part of appellants.

The amounts which Lowe agreed to pay were not for those lots alone, but for them—the Ohio lands—included in the deeds of December, 1885, and for the Mount Vernon lots. To say the least, he is liable to the extent of the value of the interest which he acquired in the Columbus lots through the conveyance from Woodruff. The complaint, therefore, makes a case for more than nominal damages. It is stated in the complaint that, in the deed from Woodruff, Lowe assumed and agreed to pay the liens upon the Columbus lots. By reason of that undertaking in the deed, a copy of it ought to have been filed with the complaint. . But the whole complaint is not rendered bad as against the demurrer because a copy of the deed was not so filed with it. And this is so, because there was a general promise to pay all of the encumbrances set out in the bill of particulars, in consideration of the ownership in all of the lots and lands in Ohio, except the lots which he agreed to convey to appellants' wives. There was no contract that he was to have and own any particular lot or tract of land in consideration of paying the liens against it only.

There is no averment in the complaint that appellants have

paid off the liens in whole or in part which Lowe agreed to pay. It is not essential to their recovery that they shall first pay what he agreed to pay in the way of purchase-money. *Port* v. *Jackson*, 17 Johns. 239; *In the matter of Negus*, 7 Wend. 499; *Smith* v. *Pond*, 11 Gray, 234; *Furnas* v. *Durgin*, 119 Mass. 500 (20 Am. R. 341).

Other interesting and difficult questions are suggested by the record and by counsel, and discussed to some extent. For example, the contract for the conveyance of the Mount Vernon lots was not in writing. Was the conveyance of the Columbus lots, and the acceptance of that conveyance by Lowe, and the taking and holding of the possession of the lots under it, such a part performance as to take the whole contract without the statute of frauds? Did the verbal release by appellants of their equity of redemption as to the undivided one-half of the Ohio lands included in the deed of December, 1885, fix the fee simple title to that one-half in Lowe?

These further questions are also suggested: What is the remedy for Lowe's wrong in refusing to convey the Columbus lots to appellants' wives? By whom, and in what manner, must the remedy be sought?

The contract, or rather contracts, upon which appellants rely, are peculiar and complicated, and as they were in parol, and are not very definitely stated in the complaint, the questions above suggested doubtless can be more intelligently decided when the whole case shall have been more fully developed by an answer, or, perhaps, by an answer and the evidence. Upon such a development of the case they may become of little importance. For these reasons we do not undertake to decide them upon this appeal.

The judgment is reversed, at appellee's costs, and the cause remanded, with instructions to the court below to overrule the demurrer to the complaint, and to grant leave to appellants to amend it, if they so desire.

Filed March 10, 1888.