May Term,
1859.

WEDDLE *v.* STONE.

WEDDLE   $\frac{12\ \ 625}{147\ \ 679}$
v.
STONE.

Where *A.* agreed with a surviving partner that if the latter would apply the assets of the firm to the payment of an individual debt of the deceased partner, he, *A.*, would pay the debts of the firm, it was *held,* that a right of action would accrue upon the breach of the undertaking by *A.*, and that the measure of damages would be the amount that was to have been paid by *A.*

APPEAL from the *Hendricks* Court of Common Pleas.

HANNA, J.— *Stone* averred in his complaint, that he and one *E. Weddle*, the brother of the defendant, were partners, &c.; that *E. Weddle* died leaving the firm property, about 600 dollars, and the debts about the same, and the estate of *Weddle* insolvent; that defendant unlawfully intermeddled, took possession of, and converted to his own use, part, &c., to the amount of 300 dollars.

In the second paragraph, he averred the partnership, &c., and that *Weddle* owed one *Perkins*, of *Lafayette*, 600 dollars, on which there was security, and that defendant immediately upon the death of the brother of defendant, urged the plaintiff to transfer to said *Perkins*, the firm property in discharge of the debt of *Weddle*, which plaintiff refused to do unless provision was made for the debts of the firm, and that defendant promised that he would pay all the firm debts in consideration that plaintiff would so transfer, &c., and that plaintiff accepted said proposition and promise, and transferred, &c., to the amount of 700 dollars; but that defendant has wholly failed to pay, &c. The fourth paragraph averred that defendant was indebted to plaintiff 700 dollars for goods, &c., sold and delivered by plaintiff to defendant; and the fifth, that defendant was indebted to plaintiff 700 dollars for goods, &c., delivered to *C. G. Perkins* by plaintiff, at the special instance and request of defendant.

The answer was—

1. A general denial.

2. That the firm was, at the death of said *Weddle*, indebted to said defendant in the sum, &c.

Reply, denying, &c.

VOL. XII.—40

Tuesday,
June 28.

Trial by a jury; verdict for the plaintiff for 424 dollars, 83 cents; and judgment over a motion for a new trial. Defendant appealed.

There is but one point made and insisted upon by the appellant, and under the rule we will not notice any others, and that is, that a new trial should have been granted, because the verdict of the jury was contrary to the law and the evidence; that there was no evidence that *Stone* had paid any portion of the debts of the firm since the death of *Weddle*, and, therefore, he should not have recovered, or, if anything, nothing more than nominal damages, until he had so paid.

The averments in the complaint show, not merely an undertaking to indemnify the plaintiff, but an affirmative promise to do a certain thing, and that was, to pay the debts of the firm of *Weddle* and *Stone*, and that such undertaking had not been kept. There are numerous authorities to the effect that a right of action accrues, upon the breach of such an undertaking, by a failure to pay, &c. ( *Churchill* v. *Hunt*, 3 Denio, 322.—*Port* v. *Jackson*, 17 Johns. 246; and see cases cited in note to *Tate* v. *Booe*, 9 Ind. R. 16); and that the measure of damages is, the amount that was to have been paid by the terms of said undertaking.

But it is said that the case in 9 Ind. R. above cited, and that of *Schooley* v. *Stoops*, 4 Ind. R. 130, establish a different doctrine in this Court.

Without critically examining the question, whether the facts in each of the cases cited, are so analogous as to bring them both within the same rule of decision, we think that there is so marked a difference in the state of facts in this case, as will enable us to decide it, without regard to the determination there arrived at.

In the case in 4 Ind. R., *Schooley* sold and conveyed to *Stoops* and others, a tract of land, and received the consideration. The land was encumbered by a mortgage, to secure the satisfaction of which, in a certain time, *Schooley* and another executed a bond to *Stoops*, &c. *Schooley* did not pay it within the time. Suit by *Stoops* and others

upon the bond, before they had paid the mortgage. It was held that no more than nominal damages could be recovered.

In that case, *Stoops* and others were not originally bound to pay the debt secured by the mortgage. That debt was owing by *Schooley*. He was primarily and personally liable to pay it. The mortgage he had given was only a security which his creditors might or might not resort to. If *Stoops* was permitted to recover before the mortgage debt was paid, he might not appropriate the sum recovered to that purpose, and the liability of *Schooley* would yet remain for that debt, to the original creditors. There was no averment nor proof that he was not amply responsible for the debt, without the necessity of a resort to the mortgage security.

In the case in 9 Ind. R., one partner sold out to the other. The purchaser was to pay the debts of the firm and take the stock on hand, &c. Breach, that a certain debt was not paid; that a judgment had been recovered thereon against the firm; and that said purchaser was insolvent. There is no averment that the assets of the firm, which thus passed into the hands of one of the partners, had been diverted from the payment of the debts, or otherwise improperly disposed of. The inference is left, that they were so applied, and were insufficient to meet all the liabilities. The partners were, then, individually liable; and if there had been a recovery against the sureties of the purchasing partner, and a failure, afterwards, by him who sold, to apply the money thus recovered to the discharge of the debts, they would still have remained outstanding against both partners.

In the case at bar, it is averred that, at the time of the death of one of the partners, the assets of the firm were sufficient to pay the debts; but not the individual debts, also, of the deceased partner, incurred before the partnership was formed. For the payment of the latter class of debts, the defendant caused and procured the diversion of all the partnership assets, by his promising and undertaking in consideration thereof, &c., to pay the debts of the

May Term,
1859.

firm. There is an averment of the total insolvency of the deceased partner. By the diversion of the partnership assets, the power was taken from the hands of the surviving partner to pay the debts out of the legitimate funds for that purpose. If he had no individual or other means to pay those debts, they would be left hanging over him—his liability would continue—and all this the result of the violation of an affirmative undertaking and promise by the defendant. The estate of the deceased could not be injured by a failure of the survivor to apply any money recovered in this suit to the payment of the debts of the firm; because if there should be a failure to recover, the money thus, by that failure, left in the hands of the defendant, would not go into the fund for the payment of any of the debts of the deceased—it would not increase the fund out of which such debts should be discharged, but would, in effect, throw upon the surviving partner the whole burden of paying those debts, and at the same time take from him the fund that should have been appropriated to that use; and, by the procurement of the defendant, apply it to the use of the estate in another quarter in which the firm, as such, had no interest, nor had the plaintiff, as surviving partner.

*Per Curiam.*—The judgment is affirmed with 5 per cent. damages and costs.

*H. C. Newcomb, J. S. Harvey, J. S. Tarkington,* and *L. M. Campbell,* for the appellant.

*R. L. Hathaway,* for the appellee.