Monks, J.
On February 18, 1886, appellees, James H. and William Turpie, commenced an action against appellant in the White Circuit Court. The complaint was in three paragraphs, to each of which the court sustained á demurrer for want of facts. Judgment was thereupon rendered in favor of this appellant which, on appeal in this court, was reversed and the *654 court below directed to overrule the demurrer to the complaint. Turpie v. Lowe, 114 Ind. 37. After the return of said cause to the court below, the demurrer was overruled as directed.
About the time of the commencement of said action by the Turpies in the White Circuit Court, in February, 1886, two other actions were commenced in the said court against appellant, growing out of the same alleged transactions set up in the action of the Turpies, one by appellee, Cornelius M. Horner, and one by appellees, Emma J. and Mary F. Turpie, wives of the said James H. and William Turpie. These three suits were pending in 1889, and were sent on change of venue to the Cass Circuit Court.'
In January, 1890, by agreement the three causes were consolidated and the court ordered that George T. Jones and others be made parties defendant. Afterwards, in April, 1890, James H. and William Turpie filed an amended complaint in five paragraphs. The second paragraph was stricken out on motion.
Appellant demurred to each of the remaining paragraphs of the complaint for want of facts, which demurrer, was overruled. To this complaint appellant filed an answer. Appellees, Emma J. and Mary F. Turpie, in July, 1890, filed their amended complaint asking damages against appellant, which he answered by general denial.
George T. Jones also filed a counterclaim asking-judgment against appellant, on which issue was joined.
The cause was submitted to the court and at request of appellant a special finding was made and conclusions of law stated thereon against appellant, to each of which he at the time saved an exception.
Upon the findings and conclusions of law, the court on February 5, 1891, rendered judgment against appellant in favor of James H. and William Turpie for *655 $19,775.00; in favor of appellees, Emma J. and Mary F. Turpie, in the sum of $10,000.00; in favor of appellee, Horner, in the sum of $3,297.00, and in favor of appellee, Jones, in the sum of $800.00.
From these judgments, appellant appealed to this court and perfected a term time appeal under section 650, Burns’ B. S. 1894 (638, R. S. 1881). • Afterwards, in November, 1891, by leave of court, appellant entered upon the transcript an amended assignment of errors adding the names of additional persons as appellees. After which a joinder in error was endorsed upon the record and signed by attorneys for appellees. This, under rule eight of this court, was an appearance and no notice to appellees was required. See Elliott’s App. Proced. sections 404, 405, 406.
But it is claimed by appellees that by the additional transcript filed May 21, 1892, attempting to bring up certain reserved questions of law, an appeal was attempted to be taken under section 642, Burns’ R. S. 1894 (630, R. S. 1881), and this was an abandonment of the first appeal. The transcript filed May 21, 1892, consisted of a bill of exceptions purporting to contain a part of the evidence given in the cause and matter supposed to be necessary to present certain reserved questions of law, and was brought into this court as a part of the record by a writ of certiorari issued in said cause on application of appellant. It is not, therefore, a separate or independent appeal but a part of the record in this cause and is not an abandonment of the term time appeal. Whether that part of the record so brought into this court presents any question or whether an appeal may be taken under both of said sections of the code we need not and do not determine.
It is claimed by appellant that the court erred in overruling the demurrer to the first, third, and fourth *656 paragraphs of the amended complaint of James H. and William Turpie. This court held on the former appeal (Turpie v. Lowe, supra, pp. 56-60.) that the part of the complaint which alleged a sale and conveyance to appellant of real estate in Ohio, and a promise to pay the purchase money, stated a good cause of action. An amended complaint has since been filed, but the allegations concerning the sale of the Ohio real estate are substantially the same in each paragraph of the amended complaint as in the third paragraph of the original complaint. There was, therefore, no error in overruling the demurrer to each paragraph of the amended complaint of James H. and William Turpie.
Many questions concerning the sufficiency of the different pleadings and the admissibility ofi evidence are discussed by counsel, but as the controlling questions are also presented by the exceptions to the conclusions of law, we will consider them, in that connection.
The special finding of facts and the conclusions of law stated thereon so far as necessary to the determination of this cause are as follows:
Appellees, James H. and William Turpie, were on December 8,1885, and still are partners in business as traders in real estate aad were, as such partners, the owners as tenants in common of real estate in the counties of White, Jasper and Starke in Indiana, and in the counties of Franklin, Union and Delaware in the state of Ohio, all of which is described in the finding, and the value of each tract stated. A part of said real estate was held by said Turpies in fee simple; as to a part, they held the equitable title under contracts of purchase; part of said real estate was held in the names of others as trustees for the Turpies, On said day there were existing and valid judgments against the Turpies in favor of divers persons rendered by the *657 White Circuit Court, the Carroll Circuit Court, of Indiana, and other courts in said State, taxes due and unpaid, ditch assessments and mortgages amounting in the aggregate to about $15,000.00.
That on or before December 3, 1885, the Turpies owned in fee simple the undivided four-fifths of a' farm of three hundred and twenty-four acres in Delaware county, Ohio, known as the Starke or Wagner farm, which farm was of the value of seventeen thousand eight hundred and twenty dollars; that the other one-fifth of. said farm was owned by George T. Jones, one of the appellees; that there were two mortgages on said farm, one in favor of the Michigan Mutual Insurance Company upon two hundred and eighty-three acres of said farm for ten thousand dollars, and one upon the remaining forty-one acres of said farm to one Starke which, with accrued interest, amounted at said date to about eleven hundred and sixty dollars; that on the same day appellant was the owner in fee of two one-acre lots in J. C. Reynold’s third .addition to the town of Monticello, Indiana, equivalent in size to the ordinary town lots, and was also the owner in fee of the northeast quarter of the northwest quarter of sec: tion sixteen, township twenty-eight north, of range four, west, in said county, known as the “Nutter forty” acres, which said lots in Monticello were worth five hundred dollars, and which said forty-acre tract was worth six hundred dollars.
That said Turpies were financially embarrassed and wholly unable to raise the money to meet their matured and maturing liabilities; that the property held by them as aforesaid was of great value, but so heavily incumbered by liens, some of which were overdue and others soon to mature, that all said property was in great danger of being sacrificed for less than its real value, and said appellant was a man of large fi *658 nancial ability and credit, and the owner of a large amount of unincumbered real estate and personal property; that he had a large amount of ready money and other assets, and was abundantly able to fulfill the contract hereinafter named.
That on said 3d day of December, 1885, said Turpies, in the name of said William Turpie, entered into an agreement with said appellant, in writing, respecting the said Starke farm as follows:
“December 3, 1885. — This is to certify that William Turpie of the first part and Hugh Lowe of the second part, have this day made a trade for a farm in Delaware county, in the state of Ohio, known as the ‘James Starke farm,’ on Starke’s Corners, the undivided one-half (-¡-) of said three hundred and twenty-four (324) acres to belong to Hugh Lowe, the other one-half (-§) to belong to William Turpie. Hugh Lowe is to assume the one-half Q-), twelve thousand three hundred ($12,300.00) dollars, and William Turpie the other one-half (-£). Hugh Lowe to have deed for the whole 324 acres for the present time. The following described property and stock on said farm is to be held jointly: Seven head of horses, 1 mule, 29 head of cattle shipped from White county, Indiana, 4 cows, 1 heifer, 2 buggies that were already on farm, 13 head of cattle bought of Dan Hunt, 110 sheep, all harness and farm implements on farm, buggies and wagons, all wheat in the ground on the farm, and all grain, hay or feed on the farm, and (1) one lot on corner of Woodruff and High streets. Lowe is to have one-half (¿-) interest in said lots and the balance of the G. A. Wagner lumber is to be divided equally by Lowe paying freight to Columbus, Ohio. Turpie is to make one hundred ($100.00) dollars up in trade to Lowe.”
“December 3, 1885. — This is to certify that Hugh Lowe of the first part, deeds or causes to be deeded to *659 William Turpie at his option the following described property: 10 lots in J. C. Reynold’s addition to the town of Monticello, Indiana; 40 acres more or less, known as the Nutter Land,’ near the town of Monon, in White county, Indiana.”
He afterwards further agreed by parol with the consent of said Turpies in consideration of said Jones and wife joining in said deed for said farm, that said appellant would convey to said Jones the undivided one-half Q-) of said lots in Reynold’s addition to Monticello, and the undivided one-half (-|) of said Nutter forty (40) acres and in consideration thereof, said Jones and wife joined in the execution of said deed. It was further agreed by parol between said appellant and said Turpies, that said appellant would pay off all the incumbrances upon said farm, and it was so stipulated in said deed, all of said incumbrances over the sum of six thousand one hundred and fifty dollars ($6,150.00), to be repaid to him by the Turpies, and until the same was repaid, he was to hold the title of the whole of said Starke Farm as security therefor; that in order to balance accounts respecting the live stock and personal property upon said farm and some payments made at the time by said appellant for said Turpies, the said William Turpie executed, on the 3d day of December, 1885, a promissory note to said appellant, for five hundred eighty and ninety-one hundredths dollars ($580,91).
That afterwards, in said month of December, the Turpies entered into a series of agreements with appellant in which it was in substance provided that appellant should pay all the liens and incumbrances on the real estate of the Turpies in Indiana, and, it was also agreed with Turpies and Horner to pay said Horner the amount of Turpies’ indebtedness to him, about thirteen hundred and thirty-five dollars, and to *660 pay the John H. Miller note upon which Horner was surety, amounting to about one thousand dollars. In consideration of which, the Turpies were 'to execute to appellant their note for their indebtedness to him, except the note of $580.91, and from time to time as Turpies’ outstanding obligations should be paid by appellant, to execute to him other notes for amounts so paid, all to bear interest at eight per cent, per annum; and to secure the amount they then owed appellant and the advances so to be made by him, they were to convey or cause to be conveyed to him their real estate in Indiana, including the four lots in Monon, held in the name of 'Horner, and the undivided one-half of the Ohio real estate, except nine lots in B. P. Wood-ruff Agricultural College addition to Columbus, Ohio, which they reserved for their wives. The Turpies in consideration of the sum of twenty thousand dollars to be paid by appellant upon liens and incumbrances then upon the Ohio real estate, sold to appellant the other undivided one:half of said Ohio real estate, which they were to convey or cause to be conveyed to him in fee simple, except that said nine lots reserved for Turpies’ wives were to be conveyed by one Wood-ruff, who held the legal title thereto, to appellant, and he was to reconvey the same to Turpies’ wives free from all incumbrances; that when the conveyance should be made to appellant for said Ohio property so sold to him, the other undivided one-half thereof should be included in the conveyance, but to be held by appellant as security to him for the payment of said Indiana debts and security for any amount in excess of said $20,000.00 which appellant might pay to relieve said Ohio real estate from, incumbrances, all of which incumbrances on the Ohio real estate appellant in pursuance of the agreement was to pay. The Tuipies conveyed or caused to be conveyed all of said *661 Ohio real estate, except a tract known as the Mt. Vernon hotel property; that the full consideration was paid by Turpies and their wives for the conveyance by appellant to Turpies’ wives of said nine lots’ and that said lots were of the value of ten thousand dollars; that Turpies’ wives took immediate possession about January 1, 1886, of said nine lots with appellant’s consent under his agreement to convey the same to them.
That in December, 1885, Turpies conveyed and caused to be conveyed to appellant all the said real estate in the county of Jasper, Starke and White, in Indiana, except four lots in Monon held by them in the name of Horner, and on December 10, 1885, said Horner and wife executed a deed to appellant for said Monon lots held in Horner’s name as security for Turpies’ indebtedness to Horner and to indemnify him from loss as their surety, who accepted said deed and promised Horner that he would pay said Miller note. That on December 7, 1885, the Turpies and appellant executed the following agreement in writing:
“This memorandum is to show that all real estate in Indiana and Ohio that James H. Turpie and William Turpie and wives have conveyed to me, Hugh Lowe, in the year 1885, is to be held in trust for them, and to be held by said Lowe as security for all claims owing to him from said Turpies, which is evidenced by promissory notes, and when said claims are paid by said Turpies, said Lowe is to convey to the’ Turpies or any one they suggest, except one-half (-|) interest in the Wagner farm in Ohio, which is explained by another contract.”
That about the first day of March, 1886, said Lowe took exclusive possession of all live stock and personal property on said Starke farm belonging to himself and said plaintiffs, and converted the same to his *662 own use, the same was of the value of four thousand dollars ($4,000.00).
That soon after the deeds for all the property aforesaid were delivered to said appellant, he without cause, refused to carry out or further perform his contracts aforesaid, and he refused to pay any more of the debts, liens or incumbrances on any of said property, and has failed to pay his said note given to Horner, or said Miller note, which last note Horner has been compelled to pay, to-wit: nine hundred and seventy-five dollars ($975.00) on the 18th of February, 1886.
That when said appellant refused he was financially able to complete and perform the same; that said Turpies had placed in his hands all their property and means that could in any way be used to pay said debts, and were, therefore, wholly unable to pay or discharge the same or any part thereof, all of which was well known to appellant when he received the same, and when he made, and also when he refused to perform the said contracts.
That before the commencement of this suit by the said Turpies they made demand of appellant that he perform all and singular, the said several contracts, and each specification thereof, and said appellant refused and has ever since refused and neglected to perform the same or any part thereof, except as herein stated.
That before the commencement of this suit, the said Emma J. Turpie and Mary F. Turpie, by their agent, James H. Turpie, demanded from appellant the conveyance to them of said lots Nos. 244 to 252, inclusive, in Woodruff’s Agricultural College addition to the city of Columbus, Ohio, free of incumbrances as specified in the agreement aforesaid, made with appellant by said James and William Turpie, and said *663 appellant refused to make such conveyance and has ever since neglected and refused to perform said contract, but in violation of his agreement aforesaid to pay incumbrances thereon, has permitted the same to be sold to pay the incumbrances that he agreed to remove therefrom, and the title to said lots has passed to innocent purchasers at sheriff’s sale.
That before the commencement of any proceedings against or in favor of said defendant, George T. Jones, he demanded of said appellant the performance of his contract to convey to him the undivided one-half (|) of said two (2) acres, equal to ten (10) lots, in Reynold’s addition to Monticello, Indiana, and to convey to him the undivided one-half Q-) of the land described herein as the “Nutter Forty Acres,” and said appellant has refused and wholly failed to make such conveyance or in any way to make compensation to said Jones for the execution by him and wife of the deed of the “Starke Farm,” in Delaware county, Ohio, executed on the 22d day of December, 1885.
That Lowe failed to pay, satisfy or discharge the liens upon the property in Ohio, deeded to him as hereinbefore found, except as otherwise stated herein, to-wit: $4,185.86; that after the 4th day of January, 1886, the several holders of the liens upon .said Ohio property, brought suits in the courts of said state having jurisdiction, and obtained decrees and orders of sale for the greater part of said property in said Franklin and Union counties, and the same was sold upon execution and at judicial sale to satisfy the liens thereon, which said appellant had agreed to pay, and thereupon the legal title to all of said real estate in Ohio- so sold was .lost to the plaintiffs.
That the real estate in the state of Ohio, conveyed to appellant and held by him as security, as aforesaid, to-wit: the undivided one-half Q-) of all the real estate *664 in Ohio, hereinbefore described, except the certain specified tracts sold at judicial sales, was so sacrificed and consumed by costs and expenses that it paid only the sum of twenty-two thousand, seven hundred and fifty-six dollars and fifty-six cents ($22,756.56), of the debts of said Turpies, which said Lowe had agreed to pay.
That on the 3d of December, 1885, the two hundred and eighty-three (283) acres of the Starke farm, in Delaware county, Ohio, under mortgage to the Michigan Mutual Insurance Company, was of the value of fifteen thousand, five hundred and sixty-five ($15,565.00) dollars, and that since that time, by reason of the failure of said Lowe to pay said incumbrance remaining unpaid after the 22d day of December, 1885, to-wit: ten thousand and three hundred dollars ($10,300.00), the whole of said two hundred and eighty-three (283) acres has since been sold on a decree of foreclosure to satisfy said mortgage, whereby the title to said real estate bias been "wholly lost to said Turpies; that the Turpies are indebted to said appellant on notes held by him and for moneys paid by him for their use, in pursuance of said contracts, and on account in the sum of $14,332.75, which is a proper set-off against any amount due said plaintiffs from him.
That prior to the commencement of this suit, said Turpies offered to deliver to the defendant, Lowe, a deed, duly signed and acknowledged by their wives and themselves, conveying the real estate in Knox county, Ohio, known as- the “Mount Vernon Hotel Property,” to him, and demanded of him then and there to carry out and perform his several contracts.
That the rental value of certain lands of the Turpies in White county, of which appellant had possession, was $1,120.00; that appellant received $35.00, *665 the proceeds of the sale of one horse, the property of the Tnrpies.
That by reason of the failure of said appellant to perform his said agreements, and the sale of said real estate by virtue of judicial process resulting in consequence thereof, there was large loss and damage to said James H. and William Turpie, that is to say, their real estate, of the value of thirty-two thousand, six hundred and ninety-five dollars ($32,695.00) satisfied only thirteen thousand, seven hundred and sixty-five dollars and seven cents ($13,765.07) of their indebtedness, but the same sales of said Lotve’s undivided one-half Q-) of some of the same real estate and. of the nine (9) lots to be conveyed to the wives of said Turpies, realized a sum which was applied in payment of said debts, enough to make up the loss, except the sum of six thousand eight dollars and seventy cents ($6,008.70).
That the value of said one-fifth of said Stark farm, conveyed by said Jones and wife to Lowe, subject to the incumbrance thereon, was, at the time of said conveyance, December 22, 1885, eight hundred dollars ($800.00).
That the value of attorneys’ services in the collection of said note from Lowe to Horner, described in said Horner’s complaint, is three hundred dollars ($300.00).
“And the court now states its conclusions of law upon the foregoing facts to be as follows:
“2. That said Horner is entitled to recover from said Lowe upon said promissory note, given by him to Horner, the sum of two thousand and thirty-three dollars ($2,033.00), and on account of the failure of said Lowe to pay said Miller note, the sum of twelve hundred and sixty-four dollars ($1,264.00).
“3. That said James H. Turpie and William Turpie *666 are entitled to recover from the said Lowe thé sum of nineteen thousand, seven hundred and seventy-five dollars ($19,775.00), which is due to them after deducting all set-offs.
“4. That said Mary F. Turpie and Emma J. Turpie are entitled to recover from said appellant the sum of ten thousand dollars ($10,000.00).
“6. That said Lowe be required to convey to said James H. and William Turpie the undivided one-half (4) of the northeast quarter (^) of section sixteen (16), township twenty-eight (28) north, range four (4) west, and the undivided óne-half (J) of the two (2) one-acre lots in J. C. Reynold’s addition to Monticello, in said county of White, owned by Lowe on the 3d day of December, 1885, and also the whole of the Bradford and Braxton lands, and also said lands in Starke county, and in Jasper county, Indiana, conveyed to said appellant, and also said lots in Monon in finding numbered 60, specified by proper deeds of release and quitclaim.
“7. That said Jones is entitled to a judgment against said Lowe for the sum of $800.00.”
The correctness of each of the conclusions of law is called in question by the assignment of errors.
It is earnestly insisted by appellant that the facts do not sustain the third conclusion of law that the Turpi es are entitled to recover from appellants $19,775.00. The correctness of this conclusion of law depends upon what is the proper measure of damages under the facts set forth in the special finding. On the former appeal of this cause, Turpie v. Lowe, supra, the deeds conveying to appellant the Indiana and Ohio real estate to secure an existing indebtedness, and future advances to pay liens set out in the special finding, were held to be mortgages. In that case, the Turpies claimed that they were entitled to recover either the full amount which the appellant [Lowe] agreed to advance as h *667 loan in the way of discharging liens and debts or the value of the lands conveyed by the deeds. In response to such contention, the court, on pp. 53, 54, said: “If we are correct in our construction of the contract set up in the complaint, Lowe’s agreement to pay liens, etc., was nothing more tha.n a contract to advance money for the benefit of appellants [Turpies], and is the same, in effect, as if he had agreed to advance money direct to them as a loan. Whatever damages, therefore, they might recover from Lowe for the refusal to make such a direct loan, after having taken security for the same, they may recover here, and nothing more.”
The covenant in a deed absolute on its face, but intended as a mortgage, or a parol contract made at the time of the execution of the deed, whereby the grantee agrees to pay a debt of the grantor due another person cannot be enforced by such person against the grantee. Such a'n agreement is nothing more in effect than an agreement to advance the amount of the debt or incumbrance as a loan upon the security of the land conveyed. Root v. Wright, 84 N. Y. 72; Garnsey v. Rogers, 47 N. Y. 233; Pardee v. Treat, 82 N. Y. 385.
It is clear, we think, that the measure of damages for the breach by appellant of his agreement to advance money to^ pay liens, etc., set forth in the finding, is the same as for breach of a contract to’ loan money direct.
This court also held, in that case, that the complaint, so far as it rested upon the agreement of this appellant to advance money, and the deeds to secure the same, only made a case for nominal damages, as no special damages were shown. When the case was returned to the court below, the Turpies filed their’ amended and supplemental complaint in five paragraphs, as heretofore stated, in which they declared *668 upon the same oral contracts, and also for the first time brought in the written agreements set out in the special finding, they not having been mentioned in the original complaint. In the amended complaint, which was filed in- April, 1890, it was- alleged that the several holders of the liens on said real estate, to pay which appellant had agreed to advance money, brought suit in the courts having jurisdiction, and procured decrees and orders of sale, upon which said real estate was, in the year 1887 and the latter part of the year 1886, sold at sheriff’s sale, and the money received applied on said liens, and sought thereby to recover as special damages the difference between the value of said real estate and the amount for which the same sold at sheriff’s sale.
It is evident, from the special finding and the conclusions-of law stated thereon, that the trial court adopted this measure of damages.
It is the rule, settled beyond controversy, that the damages to be recovered must be the natural and proximate consequences of the breach of the contract; damages which are remote or speculative cannot be recovered. Fuller v. Curtis, 100 Ind. 237, 50 Am. Rep. 786; Cline v. Myers, 64 Ind. 304; Loker v. Damon, 34 Mass. 284; Prosser v. Jones, 41 Iowa 674; Wire v. Foster, 62 Iowa 114, 17 N. W. 174, Osborne v. Poket, 33 Minn. 10, 21 N. W. 752. Hadley v. Baxendale, 9 Exch. 341, the leading English, and one followed by the courts of this country, lays down the following rule concerning the measure of damages: “Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, *669 or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it.”
When one is indebted to another and fails to pay the same when due, the damages for the delay in payment are provided for in the allowance of interest. This is the measure of damages adopted by the law in all actions by the creditor against the debtor. Loudon v. Taxing District, 104 U. S. 771; Insurance Co. v. Piaggio, 16 Wall (U. S.) 378; Greene v. Goddard, 9 Metc. (Mass.) 212, 232; 5 Am. and Eng. Ency. of Law, p. 27, and note 2, p. 25.
Appellees admit the measure of damages for the failure of a debtor to pay money when due, to be as stated, but insist that where the obligation to pay money is special, and has reference to other objects than the mere discharge of debts, as in this case to advance or loan money to pay taxes and discharge liens, damages beyond interest for delay of payment according to the actual injury may be recovered, citing 1 Sutherland on Damages, section 77, p. 165, where the rule stated by appellee is approved. The author, however, in the same section, says: “Where one person furnishes: money to another to discharge an incumbrance upon the land of the person furnishing the money, and the person undertaking to discharge it neglects to do so, and the land is lost to the owner by reason of the neglect, the measure of damages may be the money furnished with interest, or the value of the land lost, according to circumstances. If the landowner has knowledge of the agent’s failure in time to redeem the land himself, his damages will be the money furnished with interest. But if the landowner justly relies upon his agent to whom he has furnished money to discharge the incumbrance, and the land is *670 lost without his knowledge, and solely through the fault of the agent, the latter will be liable for the value of the land at the time it is lost.” See Fountain v. Lumber Co., 109 Mo. 55, 18 S. W. 1147, 32 Am. St. 648.
In Blood v. Wilkins, 43 Ia. 565, Blood was the owner of certain land in Jones county, and conveyed the same to Wilkins as security for money advanced and to be advanced by Wilkins and applied in payment of certain mortgages and tax liens upon the property; part of the money was paid out directly by Wilkins in discharge of liens, and a part was retained by him. At the time of the loan the land had been sold for taxes, but the period for redemption had not yet expired. The amount borrowed was enough to discharge all liens and to redeem from said sales. Wilkins, after the execution of said deed given as security, retained in his hands the money necessary to redeem, under an agreement with Blood that he would redeem. Wilkins failed to redeem and tax titles accrued against the land, whereby it was lost to Blood, except forty acres. The court, in speaking of the measure of damages, said: “There only remains to be considered what is the measure of their liability. Where one person furnishes money to another to discharge an incumbrance from the land of the person furnishing the money, and the person undertaking to discharge the incumbrance neglects to do it, and the land is lost to the owner by reason of the incumbrance, the measure of damages may be the money furnished, with interest, or the value of the land lost, according to circumstances. If the landowner has knowledge of his agent’s failure in time to redeem the land himself, his damages will be the money furnished with interest. But if the landowner justly relies upon his agent, to whom he has furnished money to discharge the in *671 cumbrance, and the land is lost without his knowledge, and solely through the fault of the agent, then the agent will be liable for the value of the land lost.” This language was adopted by the author of Sutherland on Damages in stating the rule. See 1 Sutherland Damages, section 77, p. 164.
The cases of Manchester, etc., Bank v. Cook, 49 Law T. (N. S.) 674, and Manahan v. Smith, 19 Ohio St. 384, cited by appellees, are not in conflict with Blood v. Wilkins, supra, but support the rule therein adopted.
In the case of Manchester, etc., Bank v. Cook, supra, the bank made an agreement to loan Cook a large sum of money to purchase a vendor’s lien upon the real estate of a corporation and a number of shares in said corporation. Cook relied upon the bank to provide the money, and did not make, or attempt to make, arrangements with any other person or company to provide the money. The bank did not provide the money, and Cook was not informed that it would, not do so until too late to procure the money elsewhefe before the time expired within which it was necessary to complete the purchase. The court held that in cases of breach of contract to lend money, the damages usually given were merely nominal, for the reason that usually if a man could not get money in one quarter he could in another, but that as Cook, by the conduct of the bank in failing to inform him at the proper time that it would not provide the money, had been deprived of the opportunity of getting it elsewhere, he was entitled to recover more than nominal damages.
In Manahan v. Smith, supra, Breckinridge conveyed to Manahan real estate in Indiana for real estate in Ohio. Soon after the deeds were executed Manahan learned that an attachment had been previously *672 levied on the real estate in Indiana at the suit of Breckinridge’s creditors. Whereupon Breckinridge, with Smith as guarantor, agreed in writing to cancel within six months the incumbrance on the Indiana land, but failed to do so', and the Indiana land was sold by order of court in 1856, without notice to Manahan, who resided in Ohio and did not hear of the same till several months thereafter. In an action against. Smith, guarantor of the agreement of Breckinridge to cancel the incumbrance within six months, the court held that the measure of damages under the circumstances was the value of the land at the time title thereto was lost, and interest thereon until judgment. It will be observed that this was not a contract to loan money, but a contract on the part of Breckinridge to pay his own debt. The right to recover the value of the land lost was put upon the ground that Breckinridge permitted the land to be sold without giving notice to Manahan, and without giving him an opportunity to discharge the incumbrance.
We think the rule concerning the measure of damages in cases where one person furnishes the money to another to discharge liens on the land of the one furnishing the money is correctly stated in Blood v. Wilkins, supra.
In an action for breach of a contract to loan money to pay liens or incumbrances, no more than nominal damages can be recovered, unless the facts showing special damages are alleged and proven. Turpie v. Lowe, supra.
When the person who contracted to make the loan neglects or refuses to do so and the owner is compelled to procure the money elsewhere, the measure of damages is the difference, if any, between the interest he contracted to pay and what he was compelled to pay to procure the money, not exceeding per *673 haps the highest rate allowed by law. 2 Sedgwick on Dam., section 622.
It is not necessary to determine whether the measure of damages for breach of a contract to loan money to pay liens, in case the land is lost, is the same as in a case of the neglect of one to whom money is furnished by the landowner to pay liens or incumbrances, for the reason that if it were conceded that the measure of damages in this case was the same as it would have been had Turpies furnished appellant the money to discharge all said debts and incumbrances, yet, under the facts as stated in the special finding, Turpies would not be entitled to special damages.
To entitle any one to recover more than nominal damages for a breach of contract to loan money to pay incumbrances, it is necessary not only to allege and prove the contract to loan the money and its breach, and that the person who agreed to make the loan knew the purpose for which it was to be used, and the necessity therefor, but also that the land was lost to the owner by reason of such liens or incumbrances, and without his knowledge, and solely through the fault of the person who was to loan the money; or if the landowner had notice- of the neglect or refusal to loan the money, that it was at such a time as to deprive him of the opportunity to procure the money elsewhere and pay said liens or incumbrances or redeem the land if sold.
The facts found in the special finding show that appellant had refused to pay any more of said liens or incumbrances, or carry out or further perform his contracts, but they do not show that such knowledge was acquired by the Turpies too late to give them an opportunity to procure from other parties the money and pay said liens or incumbrances. On the contrary, *674 it appears from the finding of facts that appellant between January 4, 1886, and' February 18, 1886, refused to pay any more of the debts, liens or incumbrances on any of said property which he had agreed to pay and refused to carry out or further perform his said contracts, and said he would not further execute the same. That the real estate in Indiana was sold in 1886 and 1887, the statute giving one year from the date of each sale to redeem the real estate. The suits to recover the judgments and decrees upon which the Ohio real estate was sold were not commenced until after January 4,1886.
It is shown, therefore, by the special finding, not that Turpies did not know of the refusal of appellant to pay said liens and incumbrances in time to give them an opportunity to procure the money, but that they had such knowledge in ample time to give them the opportunity to procure the money and pay said liens and incumbrances and thus prevent the loss of their land. Under this state of facts only nominal damages could be allowed the Turpies on account of the loss of the lands held by appellant as mortgagee. It is insisted by the Turpies that the special finding:. “That the Turpies had placed in appellant’s hands all of their property and means that could in any way be used to pay said debts, and were therefore wholly unable to pay or discharge the same or any part thereof,” shows that it was impossible for them to procure the money. In view of the other finding that all the Indiana land and undivided one-half of the Ohio land conveyed by deeds to appellant were held by him as security for money advanced and to be advanced, the part of the special finding last quoted is a mere conclusion.
These conveyances as to the real estate mentioned were merely mortgages, and appellant had no title to *675 the land which he could sell or convey. A deed executed to 'Secure a debt is a mortgage, and conveys no title; the mortgagee simply holds the land as security for the payment of the debts. His rights were the same as if the conveyances were mortgages in form. Parker v. Hubble, 75 Ind. 580; Bever v. Bever, 144 Ind. 157, and cases cited; Fletcher v. Holmes, 32 Ind. 497; Smith v. Brand, 64 Ind. 427; Miller v. Curry, 124 Ind. 48, 51; Turpie v. Lowe, supra on p. 55; Chitwood v. Trimble, 2 Baxt. 78
When in 1886, prior to February 18, appellant refused to make further advances, if Turpies had paid or tendered appellant the amount then due; they could have demanded a cancellation of the mortgages, or a reconveyance, and if refused, a court of equity would have enforced a compliance with such demand; or without paying or tendering payment a court of equity, on application, would have decreed the deeds to be mortgages. Turpies were the owners of the real estate conveyed as security, after the deeds were made, the same as before, and had the right .to sell and convey or mortgage the real estate the same as if the deeds had been in form, as they were in fact, mortgages.
In contemplation of law, money is always in the market and procurable at the lawful rate of interest. And if the owner of real estate who has a contract with another to loan him money to pay liens or incumbrances on his land, who refuses to do so, has knowledge of such refusal in time to give him an opportunity to seek for it elsewhere, the fact that he cannot procure the money on account of being in embarrassed circumstances will not entitle him to recover more than nominal damages; for the reason that no party’s condition in respect to the measure of damages is any worse for having failed in his engagement *676 to a person whose affairs are embarrassed than if the same result had occurred with one in prosperous or affluent circumstances. City of Delphi v. Lowery, 74 Ind. 520, 527, 528, 39 Am. Rep. 98; Hagan’s Petition, 5 Dillon, 96; Mayhew v. Burns, 103 Ind. 328, 338, 342; 1 Sutherland on Damages (2d ed.), section 76.
In Mayhew v. Burns, supra, this court by Mitchell, J., said:’ “The law does not set up one standard by which to determine the rights or measure the conduct of the rich, and another for the poor. Its protecting shield is extended alike over all. Its pride and glory are to mete out equal and exact justice to all, in the same scale, rich and poor alike. In this, all find security and protection.”
It follows, therefore, that, upon the facts found, the Turpies were not entitled to more than nominal'damages for the breach by appellant of his contract to loan money to pay liens and incumbrances.
As the Turpies were not entitled to recover for the breach of said contracts to loan money, it is not necessary to determine whether or not the same are void for uncertainty.
It is shown by the special finding that appellant, in consideration of the sale and conveyance to him of the undivided one-half of the Starke farm, was to assume and pay six thousand one hundred and fifty dollars of the incumbrance on said farm, and also that, in consideration of the sale and conveyance to him of the undivided one-half of the remaining Ohio real estate with the exception of the nine lots to be conveyed to Turpies’ wives, he was to pay twenty thousand dollars on the liens and incumbrances on the Ohio real estate.
The law is settled in this State that, for breaches of said agreements to pay said purchase money when due, the Turpies were entitled to sue and recover the *677 amount thereof unpaid, without first having paid said incumbrances or any of them. Weddle v. Stone, 12 Ind. 625, and cases cited; Johnson v. Britton, 23 Ind. 105; Devol v. McIntosh, 23 Ind. 529; Scobey v. Finton, 39 Ind. 275; Mullendore v. Scott, 45 Ind. 113; Turpie v. Lowe, supra, on p. 60.
Two hundred and eighty-three acres of the Starke farm were afterwards sold upon a decree of foreclosure to satisfy the mortgage, part of which appellant had assumed; the amount for which the same was sold is not stated with absolute certainty, but it is set forth that the same was sold to satisfy the mortgage thereon, upon which there was due $10,300.00. Appellant, if charged with said $6,150.00 was entitled to a, credit of one-half of the amount said land paid of said mortgage in any accounting with the Turpies; for the reason that the sale of his half of said land paid that sum on the mortgage, a part of which he had assumed as a part- of the purchase money therefor.
Appellant was to pay $20,000.00' on liens and incumbrances on the Ohio property; that part of this real estate, the undivided one-half of which was owned by the Turpies subject to the mortgage of appellant, was sold for such sum that, after deducting costs and expenses, Turpies’ one-half of the land paid $22,756.56 of the liens and incumbrances thereon. Whatever amount appellant’s half of the land so sold paid, he is entitled to credit for in an accounting with the Turpies, if he is charged with- the' $20,000.00 or any part thereof.
It should be remembered" that Turpies’ wives were entitled to recover that part of the $20,000.00 which was to have been paid by appellant on the incumbrances on the nine lots he agreed to convey to them. Turpies, therefore, were only entitled to charge ap *678 pellant with the remainder of the $20,000.00 after deducting that amount.
Applying these rules it is evident that the Turpies were not, upon the facts found, entitled to recover the sum of $19,775.00. The finding of facts is so ambiguous, uncertain and defective, that the amount which either the Turpies or appellant are entitled to in an accounting one against the other cannot be stated.
It is claimed that the part of the sixth conclusion of law which states that appellant should be required to convey to the Turpies the undivided one-half of the northeast quarter of the northeast quarter of section sixteen, township twenty-eight north, range four west, and the undivided one-half of the two one-acre lots in J. C. Reynolds’ third addition to Monticello, White county, Indiana, depends upon the written contract of December 3,1885, between Turpies and appellant which is set out in the special finding and provides that appellant shall “deed or cause to be deeded to William Turpie; ten lots in J. C. Reynolds’ addition to the town of Monticello, White county, Indiana, forty acres, more or less, known as the Nutter land near the' town of Monon, White county, Indiana.” There is nothing in the special finding which identifies the real estate described in that part of the sixth conclusion above set out as being the same as that set out in the written contract.
It is evident that the description of the lots in Reynold’s addition, both in the written contract and in the sixth conclusion of law is so indefinite that the same could not be identified or located by a surveyor. Such a description in a deed would not convey title. Gigos v. Cochran, 54 Ind. 593; Shoemaker v. McMonigle, 86 Ind. 421; Armstrong v. Short, 95 Ind. 326, and cases cited; Baker v. Pyatt, 108 Ind. 61.
*679 Besides, the contract provides tor the conveyance of ten lots in J. C. Reynolds’ addition, while the sixth conclusion of law requires the conveyance of the undivided one-half of two one-acre lots in J. C. Reynolds’ third addition, etc. The lots are not even in the same addition. It is true that it is stated in the finding that the forty acres described in the sixth conclusion of law is generally known as the “Nutter forty acres,” but the forty acres mentioned in the contract is described therein as being known as the “Nutter land.” This does not show that the forty acres mentioned in the sixth conclusion of law is the same as the forty acres intended by the contract. It will be observed that the contract provides for the conveyance of all the real estate described therein, while the conclusions of law only require the conveyance of the undivided one-half of the lots and the forty acres described in said conclusion of law. If this conclusion was predicated upon the finding that said written contract had been modified upon the parol agreement made between appellant and Jones, with the consent of the Turpies, that th§ undivided one-half of the real estate as described in the contract should be conveyed by appellant to Jones, it would seem that such modification would bring the contract, as modified, within the statute of frauds, and the contract, as modified, could not, therefore,, be enforced. Carpenter v. Galloway, 73 Ind. 418; Browne Statute of Frauds, sections 411, 414; Wood Statute of Frauds, section 403.
It follows that the sixth conclusion of law is erroneous.
It is urged by the appellant that the part of the second conclusion of law, which states that Horner is entitled to recover from appellant $1,264.00 on account of his failure to pay the John H. Miller note is not sustained by the facts found; that the promise *680 was, in effect, only to loan Turpies the money to pay said note; that if the facts found show a promise to pay said note the same was a promise to answer for the debt of another, and, not being in writing, could not be enforced.
It is shown by the special finding that John H. Miller held the note of the Turpies, upon which Horner was a surety, for about one thousand dollars; that this was one of the liabilities of Turpies which appellant had, on December 7, 1885, agreed to advance the money, by way of a loan, and pay, and to secure which the Turpies conveyed, or caused to be conveyed, to appellant real estate in Ohio and Indiana; the language of the special finding concerning the agreement to pay the-note is: “Appellant agreed with said Horner and Turpies to pay said Horner the amount due from them to Horner, to-wit: thirteen hundred and thirty-five dollars, and to pay to John H. Miller a note of said Turpies, upon which said Horner was surety, amounting to about one thousand dollars-, etc.” That certain lots in Monon were owned by the Turpies, in the name of Horner, and these lots were a part of the real estate to be conveyed to appellant as security for money advanced and to be advanced by appellant to pay Turpies’ debts; and “when appellant received the deed for the Monon lots held in Horner’s name as security for Turpies’ indebtedness to Horner, and to indemnify • him from loss as their.- surety, he promised said Horner that he would pay said Miller note.” This conveyance from Horner to appellant, made in pursuance to the agreement with the Turpies, was the only one executed to appellant by any one for said lots. The money so to be paid by- appellant was a loan to the Turpies, as held by this court on the former appeal, to secure which they conveyed, and caused to be- conveyed, real estate.
*681 The facts found do not show that appellant became the debtor of the Turpies, or the debtor of Horner. He purchased nothing of them, and did not agree to pay his own debt, but the debt of the Turpies and Horner by promising to pay the Miller note. It was, in effect, a mere contract to advance money by way of a loan to pay said note, and Miller could not have maintained any action thereon against appellant. Root v. Wright, supra; Garnsey v. Bogers, supra; Pardee v. Treat, supra.
It is settled law in this State that a contract to answer for the debt of another must not only be in writ ing, but must be supported by a sufficient consideration; such a promise may have sufficient consideration to support it, and yet not furnish ground for action, unless reduced to writing. Berkshire v. Young, 45 Ind. 461; Langford v. Freeman, 60 Ind. 46; Krutz v. Stewart, 54 Ind. 178; Hassinger v. Newman, 83 Ind. 124; Stewart v. Jerome, 71 Mich. 201, 15 Am. St. 252, 38 N. W. 895.
The general rule is that the new promise must put an end to the original debt, and extinguish it, or otherwise the new promise will be regarded as collateral, and within the statute. Holderbaugh v. Turpin, 75 Ind. 84, 87; Langford v. Freeman, supra; Crosby v. Jeroloman, 37 Ind. 264; Brant v. Johnson, 46 Kan. 389, 26 Pac. 735; Packer v. Benton, 35 Conn. 343, 95 Am. Dec. 246, and notes 250-263; Gray v. Herman, 75 Wis. 453, 44 N. W. 248; Perkins v. Hershey, 77 Mich. 504, 43 N. W. 1021; Curtis v. Brown, 5 Cush. 488; Fullam v. Adapts, 37 Vt. 391.
The question to be determined is whether the promise be to answer for the debt of another, or to pay one’s own debt. If it be to answer for the debt of another, it is within the statute; but if it is to pay the promis- or’s own debt, then it is not within the statute. Upon *682 this principle this court has uniformly held that when one promises to pay his own debt to a third party to whom his creditor is indebted, or when he purchases property subject to an incumbrance, and as a part of the purchase money agrees to pay the incumbrance, he will be liable, and the promise is not within the statute. McDill v. Chinn, 48 Ind. 315; Carter v. Zenblin, 68 Ind. 436; Bateman v. Butler, 124 Ind. 223.
But it is claimed by counsel for Horner “that appellant was liable because, when Horner conveyed the Monon lots, which he held to indemnify him from loss as Turpies’ surety to appellant, as shown by the special finding, he agreed with Horner to pay the Miller note and that this case, therefore, falls, within the rule that the promise to pay the debt of another is not within the statute of frauds, if its consideration was the abandonment to the promisor of a security for the payment of the debt, consisting of a lien upon or interest in the property to which the promisor had a subordinate title.” We do not think the facts found bring this case within the doctrine as stated, and it is not necessary, therefore, to determine whether the same expressed in such broad and unlimited terms is the law of this State. See Langford v. Freeman, supra; Crosby v. Jeroloman, supra; Curtis v. Brown, supra, and cases above cited.
It will be observed that appellant’s only title, if any he had, to the Monon lots, was that conveyed by Horner. Appellant, therefore, had no title, subordinate or otherwise, to said lots, before the deed therefor was executed by Horner! Horner, under the facts found, had only a lien as mortgagee to indemnify him as Turpies’ surety, and conveyed, if anything, no more that he possessed. Í If the conveyance by Horner to appellant had the effect to abandon any lien or interest in the Monon lots, yet appellant having no interest in, *683 or title to said lots, subordinate to Horner’s lien or interest therein, the rule urged would not apply to this case. Besides, Horner was not the creditor; he was one of the makers of the Miller note. To come within the rule, the promise must be made to, and'the lien be abandoned by, the creditor, and not by one of the debtors. Luark v. Malone, 34 Ind. 444; Browne Statute of Frauds, section 201; Wood Statute of Frauds, section 150.
The courts, under the claim of acting in the interest of equity and fair dealing, have already gone quite far enough in their effort to take the cases out of the statute requiring a promise to pay the debt of another to be in writing, and we do not think the doctrines which are the result of such efforts should be further extended.
That part of the conclusion of law, therefore, that Horner was entitled to recover from appellant $1,264.00 on account of his failure to pay the Miller note is not sustained by the facts found.
For the same reasons the court erred in overruling appellant’s demurrer to the second and third paragraphs of Horner’s coinplaint.
It is earnestly insisted by appellant that the facts found do not sustain the fourth conclusion of law, that Mary F. and Emma J. Turpie are entitled to recover ten thousand dollars. The special finding upon this part of the case is of much wider scope than the amended complaint of Turpies’ wives, which contains no averment that they took immediate possession of said nine lots with appellant’s consent, under his agreement to convey the same to them, or that said lots had been sold at sheriff’s sale to satisfy the incumbrance thereon, and conveyed to innocent purchasers; neither is it alleged that there was any lien or incumbrance on said real estate.
*684 It appears from the special finding that appellant promised to pay all the liens and incumbrances on the Ohio real estate; that he was to pay the $20,000.00 in consideration for the conveyance to him of the undivided one-half of a part of said Ohio real estate, upon said liens and incumbrances, and the excess, if any required, was to be advanced and paid by him as a loan toAhe Turpies. This included the nine lots to be conveyed to Turpies’ wives, and any liens or incumbrances thereon were to be paid under this agreement; that these lots were conveyed to appellant under the agreement that he would convey them- to Turpies’ wives; and that they took immediate possession thereof, with appellant’s consent, under his agreement to convey the same to them.
It is not directly stated in the special finding that ■there was any incumbrance on the nine lots; the finding, however, sets out that appellant permitted said lots to be sold to pay the incumbrances that he had agreed to remove therefrom, but the amount of these incumbrances, or when they became due, is not stated.
Under the agreement, and the possesssion taken thereunder by Turpies’ wives, as stated in the special finding, they were the real owners of. said nine lots; appellant had no right of possession or control, except to convey said real estate to Turpies’ wives; his title was a naked or nominal trust. Teague v. Fowler, 56 Ind. 569; Myers v. Jackson, 135 Ind. 136, and authorities cited.
It is stated in the finding that appellant failed to pay the incumbrances on said lots, and permitted the same to be sold to pay the incumbrances that he agreed to remove therefrom, and that the title thereto has passed to innocent purchasers at sheriff’s sale. It is not, however, found what part of said $20,000.00 was to have been paid on the incumbrances on the *685 nine lots, nor that such part would have satisfied the incumbrances thereon. Turpies’ wives knew before. February 18, 1886, when they commenced their action against appellant, that he had refused to comply with his contract and pay any more of the $20,000.00 on incumbrances. The loss by Turpies’ wives of the nine lots by sheriff’s sale, as shown, was caused by the incumbrances not being paid, and not by the refusal of appellant to convey the same to them. The fact that appellant refused to pay the said incumbrances of which they had knowledge, and permitted the lots to be sold to pay the same, as stated in the finding, did not give Turpies’ wives the right to recover of appellant the value of said lots, but only the amount he was to have paid thereon. The rule concerning the measure of damages is the same as if appellant had conveyed the lots to them when they took possession, or the' same had not been conveyed by Woodruff to appellant, but had been conveyed directly to them. They were the real owners of the nine lots and could have paid off the incumbrances thereon, thus protecting their title, and when the same became due recovered from appellant whatever part of the $20,000.00 was to have been paid thereon under the agreement; or, whenever said incumbrances became due, without paying the same, they had a right to recover against appellant for whatever part of said $20,000.00 was to have been paid thereon. Turpie v. Lowe, supra, on p. 60, and cases cited.
The finding upon which the right of Turpies’ wives to recover is predicated, is very ambiguous, indefinite and uncertain, and contains many conclusions. There is nothing in the finding showing how it was possible for the nine lots to be sold and conveyed by the sheriff to innocent purchasers; they, as shown by the find *686 ing, were in possession of said lots, and were necessary parties to any action to enforce any incumbrance thereon. . Their possession was notice of their title. Under such circumstances, that part of the finding which sets out that the title of said lots had passed into the hands of innocent purchasers, states only a conclusion; the facts, if any, from which such conclusion was drawn, should have been stated. For all that appears, Turpies’ wives are still in possession of said real estate; they could not be deprived of their title unless made parties to. the proceeding under which the same was sold; there is nothing set forth in the special finding which would entitle them, under the rule stated concerning the measure of damages, to recover from appellant the value of said lots.
It follows that, under the facts found, the only amount which Turpies’ wives were entitled to recover was such part of the $20,000.00 as was to have been paid on the incumbrances on said lots, with interest from the time the same became due. This sum not being shown by the special finding, there is nothing upon which a conclusion of law showing the amount they are entitled to recover can be stated.
The seventh conclusion of law, that Jones is entitled to recover $800.00 from appellant, is based upon the theory that Jones, by his counterclaim, sought to recover the value of the undivided one-fifth of the Starke farm conveyed by him to appellant.
Appellant urges that the conclusion of law is erroneous because the counterclaim of Jones, upon which the finding in his favor and the seventh conclusion of law rest, does not state facts sufficient to constitute a cause of action, and for the further reason that the counterclaim seeks to recover damages for the breach by appellant of a contract to convey real estate to Jones, and not upon the quantum valébat for the real estate conveyed by Jones to appellant.
*687 It is alleged in the counterclaim of Jones that he sold and conveyed the undivided one-fifth of the Starke farm, containing about 324 acres, in consideration of which appellant agreed “to convey, or cause to be conveyed to him the undivided one-half of ten lots in Reynolds’ addition to Monticello, White county, Indiana, which appellant represented to be worth two hundred dollars each, and the undivided one-half of forty acres of land near Monon, Indiana, by him represented to be worth one thousand dollars. That he relied upon the representations of value and believed he was contracting for property of the value of fifteen hundred dollars.”
The counterclaim proceeds upon the theory that Jones was entitled to recover damages for a breach by appellant of the contract to convey the undivided one-half of the ten lots, and the undivided one-half of the forty acres of land near Monon, Indiana, and that the measure of damages was the value of the real estate appellant had agreed to convey.
The agreement of appellant to convey said real estate is not alleged to be in writing, and will, therefore, be presumed to have been by parol. Wolke v. Fleming, 103 Ind. 105, 106; Jarboe v. Severin, 85 Ind. 496, 498; Budd v. Kraus, 79 Ind. 137.
As the agreement was for the conveyance of real estate of which Jones was not put in possession, the same was within the statute of frauds, and was incapable of being enforced, or of supporting an action for damages for its breach by appellant. Schoonover v. Vachon, 121 Ind. 3; Roehl v. Haumesser, 114 Ind. 311; Burns v. Fox, 113 Ind. 205; Wallace v. Long, 105 Ind. 522, 55 Am. Rep. 222.
Jones’ action being to recover damages for the nonperformance of the contract, the counterclaim did *688 not state facts sufficient to constitute a cause of action and there is nothing, therefore, for the seventh conclusion of law to rest upon.
Besides, the special finding shows that the right of Jones to recover was predicated upon the theory that the action was to recover the value of the one-fifth of the Starke farm. So that, even if the facts alleged in the counterclaim constituted a cause of action, the conclusions of law would be erroneous, because the same rests upon a different theory from the one set forth in the counterclaim. Judy v. Gilbert, 77 Ind. 96; Mescall v. Tully, 91 Ind. 96; Trentman v. Neff, 124 Ind. 503.
For the reasons given the said four judgments are reversed with instructions to sustain appellant’s motion for a venire de novo, and to sustain appellant’s demurrer to the second and third paragraphs of Horn-er’s complaint, and to render judgment against Horner for cost, back to, and including the overruling of said demurrer, and against the appellees, James H. and William Turpie, Emma J. and Mary F. Turpie, and George T. Jones, for costs, back to, and including the cost of the trial, and for further proceeding in accordance with this opinion.