SCHANZENBACH, Respondent, v. STOLLER et al., Appellants.

(161 N. W. 329.)

(File No. 3931.   Opinion filed February 16, 1917.)

1.   Guaranty—Indemnity—Guaranty  Against  Encumbrances—Pur-
      chaser's Payment as Consideration.

In a suit by a land purchaser, against defendants who guaranteed payment of encumbrances upon, and to save plaintiff harmless from the existence thereof upon land purchased by him, the consideration of the contract being that plaintiff should pay the full purchase price of the land, and which contract was made at the time and as part of the contract of sale, and induced the sale, held, that such guarantee contract was supported by sufficient consideration, in view of Civ. Code, Sec. 1971, providing that where a guaranty is entered into at the same time with the original obligation, or with the acceptance of the latter by the guarantee, and forms with that obligation a part of the consideration to him, no other consideration need exist.

**2.    Damages—Guaranty Against Land Encumbrances—Measure of Damages, Value of Land as.**

In a suit by a land purchaser, for damages under a guaranty against encumbrances upon the land, which land was fully paid for, held, that the measure of damages was the value of the land at the expiration of the year of redemption under a foreclosure of the mortgage encumbrances; such encumbrances having been greater than the value of the land; that if the encumbrances had been less in amount than the value of the land, the measure of damages would have been the amount of indebtedness paid by the plaintiff to protect his title. So held, in view of Civ. Code, Sec. 2329, providing that no person can recover a greater amount of damages for breach of an obligation than he could have gained by full performance on both sides.

**3.    Evidence—Res Gestae—Land Sale, Guaranty Against Encumbrances—Who Must Guarantee, Declaration of Plaintiff's Agent, Competency.**

In a suit for breach of contract guaranteeing land conveyed to plaintiff against encumbrances, statements of plaintiff's attorney, made to the vendor, that he would advise plaintiff, vendee, to purchase the land if he could get any two of the names stated in the original contract of sale, to sign the contract guaranteeing the payment of encumbrances, were competent, and not hearsay, and were proper rebuttal; such evidence being part of the res gestae of the making and entering into the contract sued upon, and tending to disprove testimony of a defendant that other persons by agreement with plaintiff were to sign the contract.

Whiting, J., dissenting.

Appeal from Circuit Court, Walworth County. Hon. JOSEPH H. BOTTUM, Judge.

Action by Daniel Schanzenbach, against Jacob Stoller and others, to recover upon a contract of indemnity against encum-

brances of land purchased by palintiff. From a judgment for plaintiff, and from an order denying a new trial, the named defandant and another appeal. Affirmed.

*Carpenter & Morrison,* and *H. G. Fuller,* for Appellants.

*Brown & Smith,* for Respondent.

(1) To point one of the opinion, Appellants cited: 27 Cyc. 1359, note 76.

Respondent cited: Callender v. Edmison, 8 S. D. 81, 65 N. W. 425; Stout v. Folger, (Iowa) 11 Am. Rep. 138; Sticher v. Cox, (Neb.) 72 N. W. 848; Locke v. Hornen, (Mass.) 41 Am. Rep. 199; Civ. Code, Sec. 1224.

(2) To point two of the opinion, Appellants cited: Lowe v. Turpie, (Ind.) 37 L. R. A. 241; Code Civ. Proc., Sec. 662.

Respondent cited: 9 Cyc. 698; Callender v. Edmison, 8 S. D. 81, 65 N. W. 425; Furnas v. Durgin, (Mass.) 20 Am. Rep. 341.

(3) To point three of the opinion, Respondent cited: Osborne v. Stringham, 1 S. D. 406, 47 N. W. 408; Jones on Evidence, (2d ed.) paragraph   ; Ency. of Evi., Vol. 11, p. 292, paragraph 2; Vol. 9, p. 374, Paragraph C.

McCOY, J. In March, 1911, plaintiff was about to purchase a certain portion of a quarter section of land from defendant Haynes. The quarter section was covered by incumbrances in excess of the value of that portion sought to be purchased by plaintiff. The agreement between plaintiff and Haynes was that the portion of the quarter section should be deeded to plaintiff free and clear of all incumbrances. Plaintiff paid the full purchase price of $2,200, and accepted a deed from Haynes reciting that the portion of the quarter section thereby conveyed was free from incumbrances. As a matter of fact the land so conveyed to plaintiff was not free from incumbrances. In order to induce plaintiff to accept said land and pay the full purchase price therefor, the defendant Haynes and the appellant, Stoller and Spiry, entered into a written contract guaranteeing and indemnifying plaintiff from any loss because of the existence of said incumbrances. The Akaska Clay Works Company had some interest in the other portions of said quarter section of land, and was interested in the payment of said incumbrances. Plaintiff alleged said

guaranty contract in his complaint and a breach thereof consisting of the defendants' failure to pay said incumbrances and in permitting a mortgage to be foreclosed and said land sold at foreclosure sale and the time of redemption to expire, by reason of which plaintiff was deprived of his title and ownership to said land so conveyed to him. Defendants Stoller and Spiry answered, alleging that they executed, signed, and delivered said guaranty contract to plaintiff upon the understanding and intention of making the Alaska Clay Works Company, a corporation, the party of the first part; that Haynes and plaintiff falsely represented to defendants Stoller and Spiry that said contract was to be binding and made by the said corporation, and falsely and fraudulently represented to them that said contract was to be signed by all the officers and directors of said corporation, and that these defendants, Stoller and Spiry, signed said contract believing the same to be the contract of said corporation, and signed by them as officers thereof, and that they signed said contract with the understanding that all said officers and directors would sign the same; that said contract was not signed by all the said officers and directors; that no delivery of said contract was had; and that the same was void, without consideration, and not binding on them. There was verdict and judgment in favor of plaintiff, and the defendants Stoller and Spiry appeal.

[1] Appellants' first contention is that the complaint failed to state a cause of action against them, and cite Lowe v. Turpie, 147 Ind. 652, 44 N. E. 25, 47 N. E. 150, 37 L. R. A. 241, as sustaining their contention. We are of the view that such contention is not well grounded, and that the decision cited has no application to a contract like the one alleged in the complaint in this action. The contract considered in Lowe v. Turpie was one to loan money with which to pay incumbrances. The contract in question is one guaranteeing the payment of incumbrances and saving plaintiff harmless from the existence thereof; the consideration of said contract being that plaintiff pay to Haynes $2,200, the full purchase price for land contracted to be conveyed to plaintiff free from incumbrances. This contract to guarantee was made at the time and as a part of the original contract of sale and of which it formed a part, and was the inducement that brought about the sale and conveyance of the land, and the acceptance thereof by

plaintiff, and needed no other independent consideration. Section 1971, Civ. Code.

[2] Appellants moved for a directed verdict at the close of the evidence on the ground that plaintiff failed to show by any competent evidence any damages; that the contract was void and without consideration; that the contract, if delivered, was delivered conditionally; that the condition had never been complied with; and that said contract never went into effect. To the overruling of this motion appellants excepted, and now urge such resulting as error. We are of the opinion that this motion was properly overruled. The appellants contend that there was no competent evidence upon which to base damages. This same proposition was presented by exceptions to the instructions to the jury. The only proof of damages was that of the value of the said land conveyed to plaintiff at the end of the year of redemption, at which time plaintiff was divested of his title under the foreclosure sale by reason of the failure of appellants to pay the said incumbrances guaranteed by them to be paid. We are of opinion, under the circumstances of this case, that this evidence furnished the proper measure of damages. If the incumbrances had been less in amount than the value of the land conveyed to plaintiff, and plaintiff had paid the same in order to protect his title, then the rule or measure of damage would have been the amount of the indebtedness so paid by plaintiff; but in a case like this, where the indebtedness was almost double the value of the land, and where plaintiff could not protect his title and loss without the payment of the entire incumbrances, and where the amount of the incumbrances would not represent the amount of plaintiff's loss or damage, the value of the land at the time plaintiff was divested of title was his true measure of damage. The measure of damage here applied was clearly within the provision of section 2329, Civ. Code, providing that no person can recover a greater amount of damage for the breach of an obligation than he could have gained by full performance on both sides. If defendants had fully performed the contract sued upon, plaintiff would have gained only the value of the land conveyed to him. Plaintiff's only loss was the title and ownership of the land free and clear of all incumbrances.

[3] Appellants also urge as error the overruling of an objection to and the reception in evidence of certain testimony of

one Brown, a witness called on behalf of plaintiff. From the record it appears that Brown is an attorney and was representing plaintiff in relation to the purchase and conveyance of said land from Haynes. One of the issues raised by appellant's answer was that other persons had also agreed to execute said guaranty contract, and that appellants only signed said contract upon the understanding that such other parties would also sign the same. The plaintiff controverted this claim of appellant, and there was sharp conflict in the testimony concerning this issue. There was evidence tending to show that the contract sued on was drawn up by Brown, without having seen appellants; that the contract was delivered to Haynes by Brown. While Brown was on the witness stand he was asked the question:

"You may state what you said to Haynes in regard to Exhibit A [the contract sued on] at the time you delivered it to him, and who you were representing at that time."

The question was objected to as hearsay, incompetent, and not proper rebuttal. The objection being overruled, the witness answered, in substance, that he told Haynes that he would advise Schanzenbach, whom witness was representing, to close his deal with Haynes if he could get any two of the names stated in the original contract to sign same, and that without he did that he would advise Schanzenbach not to accept the contract. We are of the opinion that this evidence was competent, and not hearsay, and was proper rebuttal. This evidence was clearly a part of the res gestæ of the making and entering into the contract sued upon, and tended to disprove the testimony of appellant to the effect that other persons, by agreement with plaintiff, were to sign said contract. Wigmore, Ev. 1770, 1772, and 1777.

Finding no error in the record, the judgment and order appealed from are affirmed.

WHITING, J. I am unable to agree with that portion of the majority opinion relating to the admissibility of the testimony of the witness Brown. I do not believe that the statements by Brown to Haynes are in any respect a part of the res gestæ, the entering into the contract sued on, and therefore admissible as against the appellants. I can find nothing in the sections of Wigmore on Evidence cited in the majority opinion that upholds such opinion. To get a clear understanding of the question presented

it is necessary to know the circumstances surrounding this transaction owing to some business transaction that had formerly been had between Haynes and other parties, including appellants, appellants, together with one other party, had entered into a written contract with Haynes whereby they had agreed to save Haynes harmless from certain mortgages that stood of record against a tract of land a part of which belonged to Haynes. These mortgages remained unpaid at the time that Haynes made his deal with plaintiff by which he was selling to plaintiff his part of said land, and, in order to consummate such sale without the necessity of Haynes' paying off these mortgages, Haynes and plaintiff agreed that, if Haynes and the parties to the other contract would guarantee to save plaintiff harmless from such mortgages, plaintiff would purchase the land of Haynes. It was then that Brown, as the attorney for plaintiff, drafted this guaranty contract, and, when he turned the same over to Haynes for Haynes to get the proper parties to execute same, he advised Haynes that plaintiff would be satisfied if Haynes procured two of said parties to sign the guaranty with him. It is this statement to Haynes that was improperly received in evidence. The majority cite sections 1770, 1772, and 1777, Wigmore on Evidence. The first section treats of "Utterances Constituting a Part of the Issue." That the facts of the present case do not bring it under this subdivision seems to me too clear to require any discussion to elucidate same. Sections 1772 and 1777 treat of "Utterances Constituting a Verbal Part of an Act." In announcing what will come under this subdivision, Wigmore states there are four limitations:

"(1) The conduct to be characterized by the words must be independently material to the issue; (2) the conduct must be equivocal; (3) the words must merely aid in giving legal significance to the conduct; (4) the words must accompany the conduct."

Measured by these rules, it seems clear to me that the statement of Brown to Haynes comes far from being a verbal part of the execution and delivery of the instrument as the legal contract of appellants—the real question in issue. To be a part of the res gestæ—the execution and delivery of the contract of guaranty by appellants—the statement must needs be the state-

ment of appellants, or so made in their presence as to be presumed
to be explanatory of their acts. But even outside of that fact it is
clear that such statement did not accompany any act of appellants,
nor was the act of appellants, the said execution and delivery of
the contract, in any respect equivocal. What they did was a
complete legal act. Wigmore says:

"The utterance must * * * exactly accompany the other
conduct; for otherwise it is no part of the act and can serve
merely as an ordinary hearsay assertion of what was done." Sec-
tion 1776.

And:

"The conduct must be equivocal or incomplete as a legal act
before the utterance can be admissible." Section 1774.

If appellants, after signing their names to this contract, had
handed the same to some stranger thereto who had given it to
plaintiff, and, upon action being brought, appellants had denied
a legal delivery, any statement made by appellants at time of
parting with possession of the instrument and which tended to
show their purpose in handing same to such stranger would come
directly under the limitations prescribed by Wigmore. The con-
duct of parting with possession of the instrument would of itself
be "independently material to the issue"; it would be "equivocal"
being "incomplete as a legal act"; the statement would "merely
aid in giving legal significance to the conduct" otherwise "incom-
plete"; and the words would "accompany the conduct." If the
mere delivery of the unexecuted contract by Brown to Haynes
had been of itself "independently material to the issue" then
before the court, and such delivery had been "equivocal," and the
words of Brown such as would give "legal significance" to such
"equivocal" delivery, we would then have a case where Brown's
statement would be res gestæ because such statement did, as a
matter of fact, "acompany such act." But whether Brown de-
livered the instrument to Haynes, or whether Haynes prepared
it himself, or whether it was prepared by appellants, was in and
of itself absolutely immaterial to the issue before the court—it
threw no light upon the question of appellants' liability. It was
not the delivery of the instrument that was "independently ma-
terial," but, upon the other hand, it was the statement which, if
material at all, was material regardless and independent of the

act of delivering the instrument to Haynes, and would have been just as material if in no manner connected with either the drawing or delivery of the instrument. It must be borne in mind that in case of words that are a part of the res gestæ, they must be a part of the conduct or act, and neither the act is legally complete without the words nor the words material except in connection with, and as they destroy the equivocal quality of, the act.

I am, however, unable to believe that the mere fact that this conversation got before the jury could have misled it in its determination of whether appellants understood that their liability did not depend upon there being other signers to such guaranty. I therefore concur in the result.